OPINION
Plaintiff-appellant, Seth M. Izor, appeals a decision of the Warren County Court of Common Pleas granting summary judgment to defendants-appellees, James L. Gross Lumber Company ("Gross Lumber") and James L. Gross. We reverse the trial court's decision granting summary judgment and remand the case for further proceedings consistent with this opinion.
Appellant was an employee of Gross Lumber. Appellant alleges that on August 2, 1995 he was injured while cutting wood on a Delta table saw while he was within the scope and course of his employment. Appellant's right hand came in contact with the saw blade, causing injuries so severe that a portion of appellant's little finger needed to be amputated. Appellant states that the accident occurred because "my hand was thrown into the tip of the blade when the wood that I was cutting was kicked back by the saw blade * * *."
Appellant filed a complaint against appellees on July 24, 1996, alleging that appellees committed an intentional tort. Appellant's allegation was based upon his contention that appellees removed the safety guard from the saw, and that appellant's injuries were the direct and proximate result of the removal of the guard. On February 27, 1997, appellees filed a motion for summary judgment. The trial court granted appellees' motion on May 6, 1997, holding that appellant did not present sufficient evidence that appellees knew that the injury to appellant "was substantially certain to occur." Appellant appeals this decision and presents three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF A PLAINTIFF-EMPLOYER, WHERE THE PLAINTIFF-EMPLOYEE PRODUCED CLEAR AND CONVINCING EVIDENCE DEMONSTRATING THAT A FORESEEABLE INJURY WAS SUBSTANTIALLY/VIRTUALLY CERTAIN TO OCCUR TO THE EMPLOYEE FOLLOWING THE REMOVAL OF A SAW MANUFACTURER'S BLADE GUARD.
Appellant argues that the trial court erred in finding that summary judgment was proper. Appellant claims that he presented sufficient evidence to overrule appellees' motion for summary judgment.
When reviewing a grant of summary judgment, a reviewing court must follow the standard set forth in Civ.R. 56(C), which specifically provides that before summary judgment can be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Silvers v. Elco Steel Co. (Dec. 15, 1997), Fayette App. No. CA97-06-016, unreported, at 4-5, following Welco Industries, Inc. v. Applied Cos. (1993),67 Ohio St.3d 344, 346.
"Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." Gerdes v. Super America Group (Apr. 21, 1997), Butler App. No. CA96-08-171, unreported, at 5, discretionary appeal not allowed (1997), 79 Ohio St.3d 1491. When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440,445.
The Supreme Court of Ohio has stated:
 [I]n an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee.
Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus. One of the common law elements of employer intentional tort is "intent," which has been defined in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115.
 [I]n order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against an employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe, 59 Ohio St.3d 115, paragraph one of the syllabus.
The trial court found that appellant failed to present sufficient evidence to satisfy the second prong of the Fyffe test: "the evidence fails, as a matter of law, to raise an issue that [appellees] knew that the injury to [appellant] was substantially certain to occur." In order to defeat a motion for summary judgment based upon the second prong of the Fyffe test, appellant must set forth specific facts that would permit reasonable minds to conclude that appellees knew that his injuries were substantially certain to occur. Bond v. Howard Corp. (1995),72 Ohio St.3d 332, 338.
Evidence "tending to show that the employer has deliberately removed a safety guard from the equipment, which occasioned the injury to the employee," is to be considered as "just one part of the evidentiary picture that has been presented * * * contra to, the motion for summary judgment." Fyffe, 59 Ohio St.3d at 118. "[T]he mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id. In Walton v. Springwood Products, Inc. (1995), 105 Ohio App.3d 400, discretionary appeal not allowed (1995), 74 Ohio St.3d 1478, an employee lost two fingers when his hand got caught in the hydraulic ram (a clamp which holds blocks of wood in place) of a cut-off saw. The employer had made a number of alterations to the cut-off saw similar to the features of another saw. However, one feature the employer did not duplicate on the cut-off saw was the safety guard that housed the saw blade. While discussing the second element of the Fyffe test, the court stated:
 Therefore, we hold that where the safety feature omitted is not a secondary or ancillary guard, but the primary protective device, the failure of the employer to attach such a guard creates a factual issue which would be sufficient to overcome a summary judgment exercise under the rule announced in Fyffe.
Walton at 405. In the present case, the question is whether appellant presented sufficient evidence to show that (1) the blade guard can be considered a "primary protective device," and (2) whether appellees failed to attach the blade guard.
Appellant presented evidence concerning whether the blade guard can be considered a "primary protective device." Douglas Thompson, an employee of Gross Lumber, stated that the purpose of the guard was "to keep any object from getting near the blade other than what's being cut," and that "includ[es] fingers." The owner's manual for the saw states "ALWAYS use the saw blade guard, splitter and anti-kickback fingers for every operation for which they can be used." (Emphasis sic).
Appellant also presented an affidavit of David B. McClelland, who is a safety and engineering consultant. He stated that "the failure to have the guard provided by the manufacturer in place at the time of [appellant's] injury is a violation of [Occupational Safety and Health Administration] standards, Ohio Industrial Commission standards, as well as industry standards promulgated by the American National Standard Institute." McClelland further stated that the saw "was unreasonably dangerous, and that placement of the employee in a position to use the saw in the aforementioned fashion[1] resulted in the injuries suffered by [appellant] which were substantially certain to occur, virtually certain to occur and was in fact fully foreseeable by the employer prior to their occurrence."
Appellant also presented evidence concerning whether appellees failed to attach the blade guard. James C. Gross Jr., the President of Gross Lumber, stated that when he purchased the saw, the blade guard came with the saw. Gross further stated that he did not know if at the time he purchased the saw, the blade guard was already mounted or came separately. Appellant stated in his deposition that while he worked at Gross Lumber, "the guard was never on." Michael Lamb, an employee of Gross Lumber, stated that he was injured during the summer of 1992 when his thumb came in contact with the saw blade while he was using the saw. Lamb further stated that the saw did not have a blade guard in place at the time he was injured.
Appellant's brother, Andrew S. Izor, was also an employee of Gross Lumber. He stated in his affidavit that Gross instructed him the day after Lamb's accident to put the blade guard on the saw. Andrew further states that he left the employ of Gross Lumber for about six months in August 1992, and that when he returned to Gross Lumber in January 1993, the blade guard had been removed. Andrew stated that while he worked at Gross Lumber from January 1993 until August 1995, the guard was never replaced, and that it was not available for use by the employees.
Appellant also presented evidence concerning whether appellees' were aware that the blade guard had been removed. In appellees' answers to appellant's request for admissions pursuant to Civ.R. 37, appellees state that "defendant admits that no blade guard was in place at the time of [appellant's] accident on August 2, 1995." Gross stated in his deposition that he was in the shop several times during the week. Thompson stated that Gross was typically present at the business location on a daily basis including where the saw was located. A reasonable person could conclude that Gross' presence at the shop shows that he had knowledge that the saw did not have the blade guard attached.
Appellant also presented evidence concerning appellees' appreciation of the risk of having employees use the saw without a blade guard. In Gross' deposition, he was asked whether he thought there was a real risk in terms of injuries occurring without the guard on the saw, Gross answered "I think it can, could happen."
After having construed the evidence in a light most favorable to appellant, we find that a reasonable person could conclude that the blade guard was a primary protective device, and that appellees failed to attach the blade guard. This creates a sufficient factual issue to overcome a motion for summary judgment based upon the second prong of the Fyffe test. See Walton, 105 Ohio App.3d at 405. Accordingly, appellant's first assignment of error is sustained. Pursuant to App.R. 12(A)(1)(c), appellant's second and third assignments of error are rendered moot because of our ruling on appellant's first assignment of error.[2]
Judgment reversed and remanded for further proceedings.
KOEHLER, J., concurs.
POWELL, P.J., dissents.
[1] McClelland stated that the factors that he based his opinion on were: "failure of the employer to provide a safety guard, to provide adequate training, to the use of other fixtures to prevent `kick back' injuries to employees, as well as failure to provide specific warnings, training and enforcement concerning the use of a guard * * *."
[2] Appellant's second and third assignment of error are as follows:
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER ALL EVIDENCE PRESENTED TO IT DURING SUMMARY JUDGMENT PROCEEDINGS.
Assignment of Error No. 3:
 OHIO'S INTENTIONAL TORT STATUTE, IS UNCONSITUTIONAL TO THE EXTENT THAT IT PURPORTS TO MODIFY COMMON LAW STANDARDS FOR INDUSTRIAL TORTS.