WALTON, Appellant,

v.

SPRINGWOOD PRODUCTS, INC., Appellee.

[Cite as *Walton v. Springwood Products, Inc.* (1995), 105 Ohio App.3d 400.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 94–A–0060.

Decided July 24, 1995.

*Patrick T. Murphy* and *Alec Berezin,* for appellant.

*James D. Masur II* and *Jeffrey A. Ford,* for appellee.

---

FORD, Presiding Judge.

Appellant, Joseph Walton, on June 10, 1991, was injured in the course and scope of his employment with appellee, Springwood Products, Inc. Two fingers on his left hand were amputated, and his thumb was nearly severed by an Oliver cut-off saw ("the Oliver") when his hand got caught in a hydraulic ram which was connected to the machine.

The Oliver is used to cut blocks of wood or "cants," ranging in size between six and ten feet, to the proper length for use by appellee for building wooden pallets. As the cants are readied for cutting, they are held in place by a clamp or the "ram." The Oliver also houses a conveyor which collects the waste pieces and moves them outside for resale as firewood.

Appellant was hired by appellee in 1980, primarily as a laborer, not to operate any machinery. However, in 1984 or 1985, appellant began running various saws, including the Oliver. Appellant was permanently assigned to the Oliver in 1987, and he ran the saw until he was injured on June 10, 1991.

Appellee, in 1982, made a number of alterations to the Oliver. Prior to this time, employees physically held the cants with their hands and would push a button, which was located on the motor cover, to activate the saw. Appellee had purchased another saw which performed essentially the same functions as the Oliver, and appellee reproduced or incorporated many of the design features from the second saw when it modified the Oliver. Appellee added the ram and relocated the on/off switch to a separate control box. However, one feature that appellee did not duplicate was the safety guard that housed the saw blade.

As part of the sizing process, the front portion of the wood blocks must be trimmed or "squared" before the actual cut can be made. On occasion, certain bad pieces of wood, rotten or splintered sections, cannot be used, and they need to be cut up into smaller bits. These smaller pieces "fall through" the rollers on to the conveyor belt. The opening through which these segments fall is approximately twelve to thirteen inches long. However, appellant claims that appellee advised him that pieces larger than nine inches caused the conveyor to jam. Appellant, therefore, would use the Oliver to cut these segments into smaller sections. To do this, appellant would hold the smaller blocks and then activate the cutting cycle. As the ram would close on the block, appellant would drop the piece he was holding, and it would be caught by the ram and then be cut into the

smaller sections. It was during the cutting of such a piece that appellant was injured when the ram closed unexpectedly quickly, catching his glove and fingers.

As a result of the accident, appellant filed a claim for and is receiving workers' compensation benefits. He also filed suit against appellee for his injuries, based upon the claim of intentional tort. Appellee filed a motion for summary judgment. The court granted the motion, dismissing the suit. Appellant, in his sole assignment of error, claims it was error for the court to grant summary judgment for appellee.

In a summary judgment exercise, the standard to be employed was announced in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, at paragraph seven of the syllabus:

"Upon motion for summary judgment pursuant to Civ.R. 56, the burden of establishing that the material facts are not in dispute, and that no genuine issue of fact exists, is on the party moving for summary judgment. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. However, in that Civ.R. 56(E) requires that a party set forth specific facts showing that there is a genuine issue for trial, such party must so perform if he is to avoid summary judgment. Accordingly, in an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee."

It is with this standard in mind that this court will review the trial court's decision to grant appellee's motion for summary judgment.

This court, in *Burns v. Presrite Corp.* (1994), 97 Ohio App.3d 377, 646 N.E.2d 892, recently addressed the intentional tort issue. We held:

"In *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 327, 587 N.E.2d 825, 827, the Supreme Court of Ohio stated:

" ' "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. Moreover, " * * * upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion." *Campbell v. Hospitality*

*Motor Inns, Inc.* (1986), 24 Ohio St.3d 54, 58, 24 OBR 135, 138, 493 N.E.2d 239, 242.'

"The trial court relied upon the tripartite test first set forth in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, and subsequently modified in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. The test, as it currently stands, reads as follows:

" '1.  Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)

" '2.  To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established.  Where the employer acts despite his knowledge of some risk, his conduct may be negligence.  As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness.  As the probability that the consequences will follow further increases, and the employer knows that injuries to the employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result.  However, the mere knowledge and appreciation of risk—something short of substantial certainty—is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)' *Fyffe, supra,* at paragraphs one and two of the syllabus." *Burns,* 97 Ohio App.3d at 379–380, 646 N.E.2d at 893–894.

◼ Applying this three-prong test to the facts in the instant action, we conclude that it was error for the trial court to grant summary judgment for appellee.

◼ The first prong of the *Van Fossen/Fyffe* test requires appellant to present facts which demonstrate that appellee had knowledge of the existence of the dangerous condition.

There is evidence, when viewed in a light most favorable to the nonmoving party, that appellee was aware of a dangerous process or condition in the plant. The plant manager testified that "[a]ny saw is a dangerous instrument." Furthermore, appellee had placed a warning sticker on the Oliver which depicted a bloodied hand with severed fingers. This, for summary judgment purposes, was sufficient to overcome the first hurdle under the *Van Fossen/Fyffe* standard.

The second element requires that the employee set forth sufficient facts to demonstrate that if he was subjected by his employment to the dangerous condition, the harm to him would be substantially certain. For purpose of summary judgment, we are of the opinion that appellant has fulfilled his burden.

Appellant claims that appellee's failure to install the safety guard on the Oliver, after it had copied the ram from the other saw, was "tantamount to deliberate removal" of a safety feature and, therefore, pursuant to *Fyffe* and *Watson v. Aluminum Extruded Shapes* (1990), 62 Ohio App.3d 242, 575 N.E.2d 235, sufficient to overcome a motion for summary judgment. We agree.

In *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, the Supreme Court of Ohio, at paragraph three of the syllabus, noted:

"Upon a motion for summary judgment, when a court is asked to inquire as to whether an employer has committed an intentional tort and evidence is submitted tending to show the employer has deliberately removed a safety guard from equipment which an employee is required to operate, and such equipment occasions an employee's injury, this evidence should be considered along with other evidence in support of, and contra to, the motion for summary judgment * * *."

The court in *Fyffe* indicated that the deliberate removal of the guard was evidence which needed to be considered by the trial court. While the evidence here does not show that appellee willfully removed a safety feature, it failed to copy protective measures implemented on the other machine. This action would be equivalent to purchasing a machine from the manufacturer, and rather than remove the guard, simply fail to attach it during assembly.

Appellee, on the other hand, argues that this case is more akin with *Hanlin v. E. Mfg. Corp.* (Dec. 7, 1990), Portage App. No. 90-P-2180, unreported, 1990 WL 199107, where we rejected a similar contention. This court stated:

"While OSHA safety regulations require a second type of safety mechanism to prevent injuries caused by such a malfunction, it cannot be said that appellee's failure to install this second level of defense, presents a question of appellee's intent." *Id.* at 9.

█ *Hanlin* is distinguishable from the instant case. In *Hanlin,* the shield was a supplemental measure rather that the primary guard. In the instant action, appellee modified a piece of equipment. It copied the design of another machine, but it did not copy a safety feature which was built into the model. Further, appellant offered expert testimony which indicated that the failure to incorporate the guard, which is required under OSHA standards, created a dangerous condition.[1] Therefore, we hold that where the safety feature omitted is not a secondary or ancillary guard, but the primary protective device, the failure of the employer to attach such a guard creates a factual issue which would be sufficient to overcome a summary judgment exercise under the rule announced in *Fyffe.*

The third element requires proof that the employer directed the employee to continue to perform the dangerous task despite this knowledge. When construing the evidence in a light most favorable to appellant, he met his burden so as to overcome summary disposition of the matter. He presented evidence that after appellee redesigned the Oliver, it required him to operate the machine. Additionally, he testified that he did so "[b]ecause I am an employee, [and when] the foreman tells you what to do, you do it." Therefore, the third prong of the test was fulfilled.

For the foregoing reasons, appellant's assignment of error has merit, and the judgment is reversed and the cause remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

NADER, J., concurs.

CHRISTLEY, J., dissents.

CHRISTLEY, Judge, dissenting.

I respectfully dissent from the majority in that I would affirm and adopt the well-reasoned opinion of the trial court. I particularly agree with the trial court's observations that no concern or complaint had ever been raised through the union/management safety committee, and there had been no previous incident of the hydraulic ram malfunction.

---

1. Appellee filed a motion to strike the expert's testimony from the record as the deposition had not been signed by the witness. However, the court did not rule upon this motion, and, therefore, this court will presume that it was overruled. *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203, syllabus.

Thus, while there may have been some awareness of risk, such awareness did not rise to the level of recklessness equated with an intentional tort.

I would, therefore, affirm.