OPINION
The present appeal arises from the decision of the Mahoning County Court of Common Pleas granting summary judgment in favor of an employer in an intentional tort cause of action. For the reasons set forth below, the decision of the trial court is reversed and this cause is remanded.
 I. FACTS
On August 31, 1995, Margaret Jackson (appellant) was employed as a head saw operator on an aluminum extrusion press at Astro Shapes, Inc. (appellee). As a head saw operator, appellant had a variety of job duties which included instructing the work crew on the saw, setting the saw for different sizes of cuts, pulling the stock to the saw, feeding the stock into the saw, completing production reports for all projects that were completed and performing calculations as to the weight and quantity of pieces in any particular order. While normally appellant would have two saw helpers assisting her in the completion of work orders, on the day in question there was only a single saw helper available. Therefore, in addition to her own duties appellant was required to fulfill a portion of the duties normally completed by the saw helpers.
As appellant performed her duties on August 31, 1995, the pen she was using to complete the production orders slipped out of her hand and fell into an opening in the saw's conveyor table which was adjacent to the saw itself. Due to the hectic pace of the work as well as the fact that appellant was working short-handed, she attempted to retrieve the pen from the opening in the table as no other pens were available in the immediate vicinity. As appellant placed her right hand in the opening, it became caught in a chain and sprocket drive which was only a few inches below the surface of the table. As a result, appellant suffered serious injuries to her right hand.
Due to the nature of her injuries and the manner in which they were suffered, appellant filed a complaint in the Mahoning County Court of Common Pleas against appellee on July 2, 1996. In her complaint, appellant alleged that appellee acted wrongfully with the intent to injure or with the knowledge that an injury was substantially likely to occur. Appellant's complaint eventually was amended to include a cause of action against the manufacturer of that portion of the machine which caused the injuries. Following the completion of discovery, appellee filed a motion for summary judgment asserting that there was no issue of material fact and thus, it was entitled to judgment as a matter of law. Particularly, appellee argued that appellant had not presented the requisite evidence so as to demonstrate the existence of an intentional tort cause of action. Appellant filed a response to the motion for summary judgment to which she attached two affidavits.
Upon reviewing the motions and the parties' arguments, the trial court granted summary judgment in favor of appellee on July 21, 1998. In the trial court's opinion, it was appellant's carelessness rather than any action by appellee which resulted in the injuries. On August 20, 1998, appellant filed a notice to dismiss the manufacturer as a defendant in the pending action. A timely notice of appeal was similarly filed by appellant. A single assignment of error is alleged on appeal.
 II. ASSIGNMENT OF ERROR
Appellant's sole assignment of error reads as follows:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT ASTRO SHAPES, INC.'S MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S [APPELLANT'S] CLAIMS FOR INTENTIONAL TORT AND LOSS OF CONSORTIUM."
In support of her assignment of error, appellant argues that she provided sufficient evidence relating to all elements of an intentional tort cause of action so as to create a genuine issue of material fact and avoid a grant of summary judgment. In particular, appellant asserts that she met all elements as set forth by the Ohio Supreme Court in Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115. It is appellant's position that appellee knew that a guard had been removed and that said removal created a dangerous condition. Due to such factors as the hectic pace of appellant's work as well as the failure to properly staff the saw, appellant contends that it was substantially certain that an injury would occur due to the opening in the work area. The chain and sprocket mechanism was only a few inches below the surface and was in the immediate vicinity of where appellant performed the majority of her work duties. Furthermore, while appellant was not specifically instructed to place her hand into the unguarded opening in order to retrieve her pen, the focus is argued to be on whether the injury itself occurred during and as a result of the normal work tasks.
Appellee responds to these arguments by attacking each element of the Fyffe test. First, appellee asserts that it did not have any knowledge that a guard had been removed and not replaced. Absent this knowledge, it was unaware of the existence of a dangerous condition or process. Next, appellee argues that even if there was knowledge of the dangerous condition, it could not be illustrated that an injury was substantially certain to occur. Appellee is of the position that it could not have anticipated that an employee would "blindly" and carelessly place her hand in an opening thereby sustaining an injury. Moreover, appellee relies on the fact that no prior injuries occurred at this point of exposure in arguing that it could not have foreseen any type of injury. Finally, appellee indicates that appellant was not instructed to place her hand in the opening in order to retrieve the pen and such actions were in no way related to her employment obligations. The failure to establish the existence of these key elements is viewed by appellee as being fatal to appellant's intentional tort claim.
 A. STANDARD OF REVIEW
In considering a motion for summary judgment. Civ.R. 56 (C) controls and provides that before such a motion is granted, it must be determined that: (1) there remains no genuine issue as to any material fact to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State exrel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511. Additionally, the party moving for summary judgment has the responsibility of clearly showing an entitlement to the granting of its motion:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56 (E) to set forth specific facts showing that there is a genuine issue for trial and, if the non-movant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
Due to the fact that summary judgment is designed to cut short the litigation process, trial courts should award such with caution, resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360. Furthermore, the trial court must not lose sight of the fact that all evidence must be construed in favor of the nonmoving party, including all inferences which can be drawn from the underlying facts contained in affidavits, depositions, etc.Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485
citing Turner v. Turner (1993), 67 Ohio St.3d 337, 341. In that a grant of summary judgment disposes of a case as a matter of law, this court's analysis on appeal is conducted under a de novo
standard of review. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105.
 B. APPLICABLE LAW
In order to overcome a motion for summary judgment, an employee must set forth specific facts which raise a genuine issue of material fact that an intentional tort was actually committed by the employer. Hannah, supra citing Van Fossen v. Babcock WilcoxCo. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus. The Ohio Supreme Court has further held that to establish intent for the purpose of proving the existence of an intentional tort, an employee must demonstrate the following:
 "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe, supra at 118.
The court expounded upon its explanation regarding intent when it stated:
 "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, supra.
Proof of the three elements necessary to establish an intentional tort may be made by direct and/or circumstantial evidence. Hannah, supra. Amongst the factors which may be considered when arriving at a determination is the issue of whether the employer deliberately removed a safety guard from the equipment or machine on which the employee was injured. Fyffe,supra. While said factor is not determinative of whether the employer's conduct equates to an intentional tort, it nonetheless is relevant when inquiring as to whether summary judgment is appropriate. Fyffe, supra. In Walton v. Springwood Products, Inc.
(1995), 105 Ohio App.3d 400, the Eleventh District Court of Appeals went so far as to say that proof of the deliberate removal of a safety guard in and of itself was sufficient to overcome a motion for summary judgment as related to intentional tort causes of action. Id. at 404.
A second factor, which while not determinative is nonetheless relevant, is whether or not prior accidents have occurred at the place of employment due to similar circumstances. Taulbee v.Adience, Inc., BMI Div. (1997), 120 Ohio App.3d 11, 20. While probative relative to the issue of whether an injury is substantially certain to occur, prior accidents are but a single factor to be considered in the intentional tort analysis. Id.
"Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether the procedure or device is dangerous or unsafe." Id. citing Cook v. Cleveland Elec.Illum. Co. (1995), 102 Ohio App.3d 417, 429-430.
 C. ANALYSIS
In construing all the facts within the record and the inferences which arise therefrom most strongly in favor of appellant, this court concludes that reasonable minds could differ concerning whether or not an intentional tort was committed by appellee. As such, summary judgment was inappropriate and this cause must be remanded for further proceedings.
In analyzing the appropriateness of summary judgment, we must first determine whether appellant presented sufficient evidence as related to the first prong of Fyffe, that being that appellee had knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operation. In support of this portion of the test, appellant offered an affidavit from Ronald Hoover. Mr. Hoover had been employed by appellee for approximately 12 years in the maintenance department. Through his employment, Hoover became acquainted with the machine on which appellant was injured as he had the opportunity to perform maintenance operations on such machine. Hoover opined that when the machine had originally been installed by the manufacturer, the opening where appellant had been injured was covered by a two piece guard which prevented employees from getting their hands or clothing caught in the chain and sprocket drive. Due to the frequency of repairs to the chain and sprocket drive mechanism, eventually the guards were left off so as to facilitate quicker maintenance procedures. Hoover further opined that a number of supervisors were aware of the missing guard and the nature of the head saw operator's work.
This testimony was corroborated by Michael W. Dunaway, the owner of the company that originally sold the portion of the equipment to appellee which caused appellant's injuries. According to Dunaway, when the conveyor and table portion of the saw was sold to appellee, a guard was provided which enclosed the opening where appellant sustained her injuries. When this portion of the machine was installed, two supervisory officials from the company were present. Dunaway further testified the guard was an important safety feature in that it would be unsafe to operate the machine absent said guard. Without the guard in place, there would be exposure to injury as the chain and sprocket mechanism was only four inches below the surface. Dunaway indicated that the original guard would likely have been yellow in color in order to emphasize the safety aspect of the guard. Additionally, Robert Caspary, one of appellee's employees, indicated in his deposition testimony that he recalled times in the past when a cover was over the opening where appellant was injured. At some point in time the cover had been removed and never replaced.
When construing this evidence in appellant's favor, it is clear that reasonable minds could conclude that appellee was aware of a dangerous condition in the employment setting. There was ample testimony that a guard had been in existence and had been removed. Additionally, testimony was provided that appellee had notice of the removal through its staff, particularly its supervisors. The manufacturer of the equipment further opined that it would be unsafe for employees to operate the equipment without the guard as physical harm could occur. While appellee is critical of the quality of some of the testimony provided in support of appellant's position, such is not for the trial court's consideration when addressing a summary judgment motion. Witness credibility is to be reserved for the trier of fact. So long as evidence is provided in support of appellant's position which would permit reasonable minds to rule in her favor, the summary judgment motion must be denied.
This court would further note that the evidence provided by appellant in this regard is particularly telling in light of the minimal amount of contradictory evidence offered by appellee. The majority of supervisors and employees which provided testimony via deposition were unable to confirm one way or the other as to whether a guard had been originally in place over the opening and whether said guard was ultimately removed by appellee. While a few individuals did testify that a guard in fact never was in place over the opening, the existence of ample evidence contrary to this position would permit reasonable minds to conclude that appellee was aware of a dangerous condition to which its employees were exposed.
Having addressed the existence of a dangerous condition, our focus must now turn to whether evidence was provided relating to knowledge by appellee that exposing its employees to the dangerous condition created a substantial certainty of harm.Fyffe, supra. As indicated in both Fyffe and Walton, supra, the removal of a safety guard by an employer is at the very least a factor to be considered in the overall intentional tort determination. As previously discussed, when construing the evidence in favor of appellant in the case at bar, reasonable minds could conclude that a safety guard had been removed and said removal was acquiesced to by appellee. Clearly, the removal of a safety guard such as the one at issue leads to an increased probability that harm will occur to an employee. If the opening had not created a known risk, it is not likely that a guard would have been emplaced by the manufacturer when the equipment was installed. This fact is supported by Dunaway's testimony when he indicated that the guard was an important safety feature and that operating the system without the guard was unsafe.
While Walton indicates that the removal of the guard in and of itself is sufficient to overcome an employer's summary judgment motion, this court need not solely rely upon this evidence to conclude that there was a substantial certainty of harm. The trial court was provided with an abundance of additional information which when construed in appellant's favor supports a finding that harm was substantially certain to occur. Said information relates to appellant's work environment and how those conditions played upon the removal of the safety guard.
First, testimony was provided regarding the nature of the opening which was the cause of appellant's injuries. As appellant correctly indicated to this court, the trial court made a critical factual misinterpretation in its judgment entry addressing the summary judgment motion. In the trial court's opinion, the opening was in an area which "would be too far up" to be involved in the work which appellant was assigned to do. However, appellant's testimony directly contradicts this factual determination. According to appellant, the opening was in a part of the table directly adjacent to where her clipboard would be placed and where she would perform her calculations. Due to the limited amount of space in the work area, she was provided no other area in order to perform these activities. Therefore, it would be quite evident to supervisors who viewed employee's work that the point of danger was quite accessible. Furthermore, the very nature of the chain and sprocket mechanism lent itself to injury. According to evidence submitted by appellant, the mechanism was a mere four inches below the surface of the table. Positioning such as this absent the use of a safety guard further increases the certainty of injury due to the likelihood of contact with the chain and sprocket.
In conjunction with the lack of a safety guard and the nature of the opening, the working conditions to which appellant was exposed also increased the certainty that harm would occur. Testimony from appellant as well as other employees indicated that the pace of the work on the machine in question was quite hectic. The machine had been converted from manual operation to automatic operation which increased the amount of stock which would be processed in any given shift. The pace of the work was so great that oftentimes workers would not be able to take a break in an eight hour shift. The production line would never be shut down to accommodate breaks so employees were only granted breaks if they could work fast enough to get ahead of schedule. Testimony further revealed that supervisors were aware of this practice but failed to remedy it. To make matters worse, appellant was forced to work with a limited staff on the day in question. While normally she would be provided two saw helpers to assist with job duties, on the day of her injury appellant only had one saw helper. Therefore, in addition to her own job duties and the hectic pace, appellant had to take up some of the slack of her fellow employee. Appellant made her supervisors aware of this problem at the beginning of her shift. However, she was instructed to begin work despite these circumstances.
When viewing these facts and the reasonable inferences which arise therefrom in a light most favorable to appellant, reasonable minds could determine that appellee knew harm was substantially certain. All of these factors build upon one another so as to permit a finding that appellee's conduct went beyond that of negligence or even recklessness. While appellee relies strongly on the fact that no prior injuries occurred due to the unguarded opening, such is not determinative of whether harm was substantially certain to occur. Taulbee and Cook, supra.
Since reasonable minds could conclude under the circumstances that the second prong of Fyffe was fulfilled by appellant, we must now determine whether the, final prong of the test has been met.
Appellee would have this court hold that appellant cannot prevail in regards to the third prong as her injury did not occur as a result of her job duties. The support for this proposition is that appellant was not required by her employer to reach into the opening to retrieve her pen. Rather, appellant blindly and carelessly reached into the opening. As such, appellee did not. require the performance of a dangerous task. However, this court again ascertains that appellant provided sufficient evidence so as to create a genuine issue of material fact. As explained, appellant was clearly placed in danger due to the lack of a safety guard, the nature of the opening and the circumstances surrounding her employment. While a supervisor did not stand over appellant and instruct her to place her hand in the opening, such is not the gauge to determine whether appellee was required to perform a dangerous task. The simple fact is that appellant was placed in the area of danger as she was required to make calculations regarding various orders. As part of these duties, appellant had to use a pen and clipboard. According to appellant's testimony, the area near the opening was the only place where she could place her materials when she was not using them.
Once the pen dropped into the opening, appellant was forced to make a split second decision as to how to react. At that point in time, she did not have the benefit of hindsight. She knew that she was under-staffed and that there was no time for a break. Furthermore, there were no other pens in the area for appellant to use in the completion of her job tasks. In that appellant was not aware that the opening posed a danger and had not been instructed regarding such, she had no reason to believe that placing her hand in the opening to retrieve her pen would result in harm. Due to the nature of the requirements of her position, the pen was instrumental as to the ability to keep production going and prevent operations from falling behind. Based upon these circumstances, reasonable minds could find that appellant's employment situation required her to immediately retrieve the pen and continue her job functions.
If this court were to adopt appellee's position, it would result in the preclusion of many intentional tort actions which should have merit. Under many circumstances it could be argued that an employee was not required to reach into an unguarded press, to reach into an unguarded opening or to take a wrong step while at extreme heights when adequate safety lines or nets had not been provided. Certainly employers are not so devious or demented so as to specifically instruct an employee to perform a task that is absolutely certain to result in harm and then stand idly by as the situation unfolds. Such is not and should not be the standard for recovery. The key is that the employer created the dangerous situation and then placed an employee in the work environment where harm is substantially certain to occur based upon the circumstances. In light of the circumstances in the case at bar, an issue of material fact does exist as to whether or not appellant's actions were in fact related to her job duties and thus arose from the dangerous procedure created by appellee.
For the foregoing reasons, appellant did succeed in presenting sufficient evidence so as to meet all three prongs of the Fyffe
test so as to proceed with her intentional tort action. Hence, the decision of the trial court is reversed and this cause is remanded for further proceedings consistent with this court's opinion and according to law.
COX, P.J., WAITE, J., concurs.
APPROVED:
 ____________________________________ JOSEPH J. VUKOVICH, JUDGE