{¶ 34} I agree with the majority that the Pages introduced evidence to establish the first prong of the Fyffe test. However, I would also find that they established the second and third prongs as well. Thus, I would have reversed the summary judgment of the trial court and remanded this cause to the trial court for further proceedings.
 Second Prong of Fyffe Test {¶ 35} I agree with the majority that some relevant facts and circumstances that may support a finding that an employer had knowledge of a high probability of harm include, inter alia: prior accidents of a similar nature, see Sanek, supra, at 170; inadequate training, seeVermet, supra, at 602; and whether an employer has deliberately removed or deliberately failed to install a safety guard, see Brookover at ¶ 130, citing Walton v. Springwood Products, Inc. (1995),105 Ohio App.3d 400.
 {¶ 36} While the Pages have failed to introduce evidence tending to prove the existence of a prior similar accident, that failure "is not necessarily fatal to a plaintiff's case." Taulbee, supra, at 20. As theTaulbee court stated: "* * * Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If this court accepted the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. This is not the purpose of Fyffe."Taulbee at 20, (quoting Cook v. Cleveland Elec. Illum. Co. (1995),102 Ohio App.3d 417, 429-430). As the Cook court aptly noted, "It is not incumbent that a person be burned before one knows not to play with fire." Cook at 430.
 {¶ 37} The Pages cite Rennell's report, and the National Safety Council Data Sheet regarding belt conveyors for bulk materials attached thereto to support their contention that Taylor knew that Lidora's injury was substantially certain to occur. In its reply memorandum below, and its brief here, Taylor objects to the use of Rennell's report and the National Safety Counsel Data Sheet attached to it, on the ground that they do not fall within the categories of evidence permitted by Civ.R. 56. Additionally, Taylor contends that the National Safety Counsel Data Sheet is hearsay pursuant to Evid.R. 802.
 {¶ 38} "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E). See, e.g.,State, ex rel. Corrigan, v. Seminatore (1981), 66 Ohio St.2d 459, 467, 20 O.O.3d 388, 393, 423 N.E.2d 105, 111 (`The requirement of Civ.R. 56[E] that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions.') Moreover, while it is correct that a court, in its discretion, may consider other documents than those specified in Civ.R. 56(C) if there is no objection, Brown v. Insurance Co. (1978),63 Ohio App.2d 87, 17 O.O.3d 267, 409 N.E.2d 253, there is no requirement that a court do so." Biskupich v. Westbay Manor Nursing Home
(1986), 33 Ohio App.3d 220, 222.
 {¶ 39} Here, in support of their memorandum contra summary judgment the Pages submitted Rennell's affidavit with his March 10, 2003 report and the National Safety Council Data sheet attached thereto. While Rennell's affidavit states that a copy of his report is attached, the affidavit fails to specifically authenticate the report and the National Safety Council Data Sheet attached to it by stating that the copies are "true and accurate reproductions." However, because Rennell's deposition testimony is properly included in the record, the inadequacy of his affidavit does not completely preclude our consideration of Rennell's opinions.[4]
 {¶ 40} Furthermore, Evid.R. 703 provides that facts or data upon which an expert "bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703 does not preclude an expert from rendering an opinion based upon materials outside the record. As noted by the Fifth District Court of Appeals, "[t]his is critical to a summary judgment motion affidavit as all the facts or data are not part of the record." Nauman v. Cooper Energy Svcs. Internatl.,
Knox App. No. 01CA15, 2002-Ohio-1840, ¶ 26.
 {¶ 41} Here, the National Safety Council Data Sheet is not properly part of the record. However, to the extent that Rennell's testimony discusses the information contained in the National Safety Council Data Sheet and relies upon it in forming his opinions, this court may consider it.
 {¶ 42} In his affidavit and deposition, Rennell states that he reviewed, inter alia, the A.N.S.I. conveyor code, OSHA regulations, and the National Safety Council Data Sheet for Conveyors. Rennell states in his affidavit: "It is clear to me based upon my investigation and the materials I have reviewed, that Taylor Lumber did engage in an employer intentional tort with respect to Lidora Page in that Taylor Lumber knew of the danger associated with an unguarded nip point, Taylor Lumber instructed its employees to clean around the conveyor and this unguarded nip point and knew they did so while the conveyor was running, and Taylor Lumber knew that harm to an employee was substantially certain to occur under these conditions."
 {¶ 43} Several Ohio courts have recognized that an expert's affidavit that does nothing more than echo an employee's opinion about the dangers of his work does not raise a genuine issue of material fact as to the employer's knowledge that injury was substantially certain to result from the work. Delnoce v. Bridgestone/Firestone, Inc. (Feb. 9, 1999), Summit App. No. 18883, citing Hoadley v. Quality Castings Co. (Apr. 24, 1996), Wayne App. No. 95CA0070. Here, however, Rennell's deposition testimony serves to explain and support his conclusory affidavit statement. Rennell testified that his report states, "[i]t is my opinion that allowing untrained employees to clean near an unguarded nip point on a moving conveyor is substantially certain to result in serious injury." He then explained that Taylor placed its employees near a moving, unguarded conveyor belt pulley, and told them that it was okay to sweep, shovel up debris or pick up wood scraps, and dump them on the conveyor. Based upon these instructions, Rennell found that it was foreseeable that employees completing these cleanup tasks would reach into the conveyor if they saw pieces of lumber in there, believing that it was part of their assigned duties. He then cited the National Safety Council's data sheet for the proposition that one of the most common times for people to be injured by conveyor belts is when they are cleaning a moving conveyor belt.
 {¶ 44} Rennell explained that the conveyor belt configuration would not be substantially certain to cause harm if the employees were trained never, under any circumstances, to touch the conveyor belt or get anywhere near the conveyor belt. He then went on to explain that "what makes [the injury] substantially certain to occur is the failure to instruct employees about the danger when [the employer] know[s] people are reaching in there." Rennell further opined that Lidora's accident was substantially certain to happen because, based upon her testimony, the first and only time she reached into the conveyor belt, she got hurt.
 {¶ 45} Here, there is some evidence tending to demonstrate that Taylor's employees, including Lidora, did not receive adequate training. Lidora testified that she received no instruction regarding the use and operation of the conveyor belt. Lidora also testified that, during her three months of employment with Taylor, she was never told to have the conveyor belt shut down if she noticed scrap lumber trapped in the belt. Moreover, Lidora stated that on a prior occasion when she noticed scrap lumber in the conveyor belt, she witnessed one of Taylor's Mexican employees reach in the conveyor belt to retrieve it.
 {¶ 46} Construing the foregoing evidence in a light most favorable to the Pages, a reasonable trier of fact could conclude that Taylor knew that an accident such as Lidora's was substantially certain to occur due to its knowledge of the dangerous nature of the unguarded in-running nip point and its failure to adequately train its employees regarding the danger.
 {¶ 47} The employer's deliberate removal or failure to install a guard may also support a finding that the employer knew that harm was substantially certain. Fyffe paragraph three of the syllabus; Walton v.Springwood Products, Inc. (1995), 105 Ohio App.3d 400. Here, Taylor concedes that the conveyor belt was unguarded at the time of Lidora's accident. However, Taylor contends that it presented no danger because there was no evidence that any employee was required to be in close proximity to the nip point. Yet, Lidora and Cooper's testimony reveals that employees cleaned the area around the conveyor belt daily. Furthermore, the record demonstrates that the nip point was clearly within reach of these employees as they cleaned.
 {¶ 48} This situation differs factually from that of Walton, supra, where the employer replicated a piece of equipment, but deliberately chose not to incorporate a safety device present in the original. However, construing this argument in a light most favorable to the Pages, a reasonable trier of fact could conclude that Taylor knew Lidora's injuries were substantially certain to occur based upon Taylor's deliberate decision to forego mechanical guarding, with knowledge that its untrained or minimally trained employees were reaching into the moving conveyor belt to retrieve scrap lumber.
 {¶ 49} Based upon the foregoing, I would find that the Pages have demonstrated the existence of a genuine issue of material fact with regard to the second prong of the Fyffe test.
 Third Prong of the Fyffe Test {¶ 50} The third prong of the Fyffe test requires the employee to produce some evidence tending to show that the employer, despite its knowledge of the dangerous condition and the substantial certainty of harm to its employees, continued to require the employee to perform the dangerous task. For purposes of surviving a motion for summary judgment, it is not necessary for the employee to demonstrate that the employer ordered the employee to engage in the dangerous task. The employee may satisfy this element by producing "evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task." Gibson v. Drainage Products, Inc.,95 Ohio St.3d 171, 2002-Ohio-2008, ¶ 24. See, also, Hannah at 487. A jury question exists if there is sufficient evidence to demonstrate "that the employer merely expected the employee to engage in a dangerous task." Id.; Costin v. Consol. Ceramic Products, Inc. (2003),151 Ohio App.3d 506, 511.
 {¶ 51} Here, the Pages have presented some evidence tending to prove that Lidora was instructed to clean the sawdust and scrap wood around the subject conveyor belt, with little or no training or instruction regarding the specific hazards of the area. Additionally, the Pages assert that without training, Lidora was left to follow the example of her co-workers, at least one of whom she witnessed reach into the conveyor belt to retrieve scrap lumber as she did on the day of her accident.
 {¶ 52} Taylor contends that Lidora was explicitly instructed to clean the area around the conveyor belt, and notes that there was no evidence that any supervisor ever instructed her to remove wood pieces from the conveyor belt. Taylor claims that employees caught sticking their hands in the conveyor belt to remove wood scraps were chastised for the conduct.
 {¶ 53} Taylor asserts that Lidora's actions were similar to the actions of the employee in Sanek v. Duracoat Corp. (1989),43 Ohio St.3d 169, who struck a mixing shaft with his gloved hand in an effort to correct a "clapping" noise in the machine. The employee's hand was caught in the rotating shaft and sustained injuries resulting in the amputation of his arm. There, the employee prevailed on his intentional tort claim at trial, and the trial court overruled the employer's motion for a directed verdict and judgment notwithstanding the verdict. The court of appeals affirmed the trial court's decision. The Ohio Supreme Court reversed the court of appeals, finding that the employer could not be expected to anticipate the employee's actions that led to his injury.Id. at 172. While the Sanek court indicated that there was evidence that other employees had engaged in similar conduct without injury, there was no indication that the company was aware of such prior conduct.
 {¶ 54} Taylor argues that, as in Sanek, it could not anticipate that its employee would undertake this dangerous task while acting within the scope of her normal duties. I disagree. Here, there is ample evidence in the record that would allow a reasonable trier of fact to conclude that Taylor had knowledge that its employees reached into the moving conveyor belt to retrieve scrap lumber when they were instructed to clean the area around the conveyor belt.
 {¶ 55} Additionally, a reasonable trier of fact could conclude that an employer giving an employee an instruction to clean up sawdust and scrap wood in a general area would expect that employee to clean up all of the sawdust and wood scraps in the vicinity. Accordingly, I would find that the Pages have met their burden of demonstrating a genuine issue of material fact with regard to the third prong of the Fyffe test.
 Conclusion {¶ 56} I respectfully dissent because I would find that the Pages have satisfied their burden of establishing that genuine issues of material fact exist. Therefore, summary judgment is inappropriate. Accordingly, I would sustain the Pages' sole assignment of error, reverse the judgment of the trial court, and remand this cause for further proceedings.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that costs herein be taxed to the appellant.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, J. and Wright, J.: Concur in Judgment and Opinion. Kline, J.: Dissenting with Dissenting Opinion.
Kline, Judge, McFarland, Judge, Wright, Justice.
[4] It appears that Rennell's March 10, 2003 report was an exhibit at his deposition. However, I note that the exhibits from his deposition are not included in the record before this court.