OPINION
{¶ 1} Appellant James Stine appeals from the decision of the Court of Common Pleas, Stark County, granting summary judgment, in an intentional tort action, in favor of appellant's employers. The relevant facts leading to this appeal are as follows.
 {¶ 2} In early June 2001, appellant, employed as a warehouseman at Appellee Railway Transfer Storage Company ("RTS") in Alliance, Ohio, was assigned to work in the company's rail yard. On June 11, 2001, while performing a procedure of jumping on a moving rail car to apply the car's brake, appellant fell under the wheels and suffered a traumatic injury to his left leg, resulting in a below-knee surgical amputation.
 {¶ 3} Appellant filed an intentional tort claim against RTS on June 11, 2002. On February 10, 2003, the corporate assets of RTS were purportedly purchased by Ohio Transfer Rail, Ltd., an Ohio limited liability company. Accordingly, on February 6, 2004, appellant filed an amended complaint. RTS and Ohio Transfer (hereinafter "appellees") filed an answer on March 5, 2004. On December 30, 2004, appellant filed a motion for summary judgment. Appellees filed their own motion for summary judgment on March 1, 2005. Both sides thereafter filed memoranda contra.
 {¶ 4} On March 14, 2005, appellees filed a notice of the filing of the affidavit of RTS manager Dennis Ostrowski. Appellant filed a motion to strike the affidavit on March 25, 2005.
 {¶ 5} On April 8, 2005, the trial court issued a thorough nine-page judgment entry denying appellant's motion to strike the Ostrowski affidavit, granting appellees' motion for summary judgment, and denying appellant's motion for motion for summary judgment.
 {¶ 6} Appellant filed a notice of appeal on May 5, 2005. He herein raises the following two Assignments of Error:
 {¶ 7} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE-EMPLOYER AS AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHICH INDICATED MORE THAN SUFFICIENT BASIS IN THE RECORD TO RAISE A JURY QUESTION OF WHETHER APPELLEE-EMPLOYER POSSESSED THE REQUISITE LEVEL OF INTENT UNDER THE THREE-PART TEST SET FORTH IN FYFFE V. JENO'S (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, AND ITS PROGENY, TO HAVE COMMITTED AN EMPLOYER INTENTIONAL TORT.
 {¶ 8} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFFS' [SIC] MOTION TO STRIKE EVIDENCE NOT PROPERLY IN THE RECORD AND MOTION FOR SUMMARY JUDGMENT, WITHOUT INDICATING FINDINGS OF FACT OR CONCLUSIONS OF LAW AND CONTRARY TO THE COURTS [SIC] OWN ORDERS, THE APPLICABLE STATUTES AND CIVIL RULE, THEREBY CREATING PREJUDICIAL ERROR TO THE APPELLANT-EMPLOYEE.
 I. {¶ 9} In his First Assignment of Error, appellant argues the trial court erred in granting summary judgment in favor of the employer-appellees in the intentional tort action. We disagree.
 {¶ 10} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *" A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 11} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 662 N.E.2d 264.
 {¶ 12} Section 35, Article II of the Ohio Constitution and R.C. 4123.74 provide an employer is immune from suit by its employees for occupational injuries except for injuries resulting from intentional torts. See Jones v. VIP Development Company
(1984), 15 Ohio St.3d 90, 472 N.E.2d 1046. In Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the Ohio Supreme Court held that in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against an employee, the following must be demonstrated: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subject by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id., at paragraph one of the syllabus. Proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Id., at paragraph two of the syllabus. In addition, "[a] dangerous condition, as defined in the employer intentional tort doctrine, must be something beyond the natural hazard of employment." Burkey v. Farris (June 30, 2000), Tuscarawas App. No. 1999AP030015, citing Taulbee v.Adience, Inc., BMI Div. (1997), 120 Ohio App.3d 11, 17,696 N.E.2d 625.
 {¶ 13} In the case sub judice, we need not dwell extensively on the initial Fyffe requirement. The trial court found that appellant had demonstrated for purposes of summary judgment review that RTS knew of the existence of a dangerous process, procedure, instrumentality or condition, i.e., the employees' practice of jumping onto moving rail cars, within its business operation at the rail facility. Judgment Entry, April 8, 2005, at 4-6. Upon our de novo review of the record, we likewise find that the initial Fyffe requirement should survive summary judgment.[1]
 {¶ 14} We thus next analyze whether summary judgment was proper as to the second Fyffe requirement; i.e., as to the issue of whether RTS knew that if appellant were subjected by his employment to the dangerous condition, i.e., jumping onto moving rail cars, then harm to him would have been a substantial certainty.
 {¶ 15} As the trial court correctly noted, a lack of prior railway car accidents of this nature would not necessarily be dispositive of appellant's claim in this matter. See, e.g.,Taulbee, supra, at 20. In addition, as we recognized inBraglin v. Lempco Industries, Inc., Perry App. No. 03 CA 13,2004-Ohio-291, Ohio law permits plaintiff-employees to present expert testimony to demonstrate that an employer was aware that injury was substantially certain to occur. See Brewster v.Prestige Packaging, Inc., Butler App. No. CA2000-05-085, 2001-Ohio-4201, citing Walton v. Springwood Products, Inc.
(1995), 105 Ohio App.3d 400, 405, 663 N.E.2d 1365. Appellate courts in Ohio have further reversed summary judgments where the evidence included an expert opinion stating that if an employee were subjected to the employer's lack of safety measures, injury would occur with substantial certainty. See Brewster, supra, citing Miltenberger v. Exco (Nov. 23, 1998), Butler App. No. CA98-04-087; Izor v. James L. Gross Lumber Co. (Mar. 9, 1998), Warren App. No. CA97-07-076. See, also, Linebaugh v. ElectricalControl Systems, Inc., et al. (Sept. 23, 1994), Montgomery App. No. C.A. 14412.
 {¶ 16} In the case sub judice, appellant provided in the summary judgment materials an affidavit and attached report by James D. Madden, P.E., regarding appellant's claim. The report sets forth that Madden was provided with appellant's deposition, photographs of the RTS facility, color photocopies of the rail car, newspaper articles, OSHA investigation and citation materials, a medical examination report, and various court documents. Madden opined as follows in pertinent part:
 {¶ 17} "The practice of persons climbing onto a moving railcar is extremely hazardous. It is a violation of the most basic safety principles. It is a violation of OSHA regulations requiring an employer to provide a place of employment which is free of recognized hazards that are likely to cause death or serious physical harm to employees. The practice is also completely unnecessary.
 "* * * {¶ 18} "There is no `right way' to climb onto a moving railcar. Any way a person climbs onto a moving railcar is severely and unacceptably hazardous. There is no method of climbing onto a moving railcar which is also safe. Any discussion of the so-called relative merits of one technique versus another to climb onto a moving railcar completely misses the point that the activity of a person climbing onto a moving railcar, in and of itself is inherently and unacceptably hazardous. Climbing onto a moving railcar places a person involved in the activity in severe danger of severe injury, most probably permanent injury or death. An activity with such a hazard is not justified in any industrial atmosphere.
 {¶ 19} "The phrase `an accident waiting to happen' is an accurate description of the practice of climbing onto moving railcars. The practice of climbing onto moving railcars is substantially certain to cause serious injury or death to persons who are involved in the practice. It is not credible that the severe hazard of the practice and the substantial certainty that this practice will cause serious injury or death would be outside the knowledge of persons running a rail yard operation." Madden Report at 2-3.
 {¶ 20} Appellees, in their brief, essentially respond that Madden's conclusion as to "substantial certainty" is merely rote in nature, and they assert at several points that Madden simply relies on "unspecified OSHA violations." Appellees' Brief at 12-13.
 {¶ 21} Upon our review of Madden's opinion in light of the remainder of the evidence presented, including the lack of prior incidents of this nature, the apparent lack of prior OSHA violations, and the various co-worker recounts of the day-to-day activities in the rail yard, we are unable to conclude that a jury question exists as to the "substantial certainty" component in this matter. "Substantial certainty" has been aptly defined as "more than merely a foreseeable risk and more than even a strong probability." Kurisoo v. Providence Worcester Railroad Co.
(C.A. 2, 1995), 68 F.3d 591, 596. In the case sub judice, we find the actions of RTS, in its questionable procedures for having its employees move and unload railcars, while arguably reckless, fall short of this difficult standard.
 {¶ 22} We thus move on to the third prong of Fyffe, as to whether RTS acted to require the employee to continue to perform the dangerous task. "Under the third prong of Fyffe, the employer does not have to expressly order the employee to engage in the dangerous task which led to his death." Browne v.Walgreens, Lake App. No. 2002-L0-622003, 2003-Ohio-6691, at ¶18, citing Gibson v. Drainage Products, Inc.,95 Ohio St.3d 171, 766 N.E.2d 982, 2002-Ohio-2008, at ¶ 23. Instead, "in an action alleging workplace intentional tort, in order to overcome a motion for summary judgment, an opposing party can satisfy this [third] requirement by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task." Id.
 {¶ 23} In the case sub judice, the record includes, inter alia, the depositions of appellant himself and appellant's co-workers, James McArthur, Michael Walter, and Larry Powell. Appellant testified, when asked about his decision to jump on the moving rail car: "I was just doing my job. I was doing what I was told." Stine Deposition at 147. Powell acknowledged that all of the RTS employees have jumped on moving railcars, and agreed that it was a "standard practice." Powell Deposition at 27. McArthur, who was hired in May 2000, testified that his current supervisor was probably not aware of the "jumping" practice, but his previous supervisor was aware. McArthur further revealed:
 {¶ 24} "Q: What type of training did you have when you went to the rail yard?
 {¶ 25} "A: I was just shown how to set a brake on a railcar, how to release them, what side of the car to get up on when they were moving to jump up on them to set a brake, which way the switches were thrown for inbound tracks, outbound tracks and that was about the extent of it.
 "* * * {¶ 26} "Q: Would there ever be an occasion where you would jump onto a moving railcar?
 {¶ 27} "A: Yes. I do it every day.
 {¶ 28} "Q: Okay. And is that standard procedure?
 {¶ 29} "A: For us, yes; but I guess you shouldn't do it all the time.
 {¶ 30} "Q: Okay. And why shouldn't you do it?
 {¶ 31} "A: In case of an injury.
 "* * * {¶ 32} "Q: Okay. But you still do that?
 {¶ 33} "A: On a daily basis I do it, yes." McArthur Deposition at 11, 16-17.
 {¶ 34} Appellees, in reply, direct us to Dennis Ostrowski's testimony that RTS did not instruct or permit employees to climb on moving railcars, and that if appellant had objected, he would have been told not to do so. See Ostrowski Affidavit, March 14, 2005. Nonetheless, pursuant to Civ.R. 56, we find upon review of the record that a material issue of fact would have been presented as to whether RTS, through its actions and policies, placed appellant in a position where he would be continually subjected to the dangerous task of jumping on and braking railcars.
 {¶ 35} However, under the circumstances of this case, we hold that summary judgment in favor of appellees was properly granted based on the second Fyffe requirement. Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 36} In his Second Assignment of Error, appellant argues the trial court abused its discretion in declining to strike the aforementioned affidavit of Dennis Ostrowski. However, Ostrowski's affidavit pertains chiefly to the first and third prongs of Fyffe; we have relied on the second prong in concluding summary judgment was warranted in favor of appellees. Therefore, based on our holding in regard to appellant's First Assignment of Error, we find this issue moot. See, e.g., Statev. Bistricky (1990), 66 Ohio App.3d 395, 397, 584 N.E.2d 75.
 {¶ 37} Appellant's Second Assignment of Error is overruled as moot.
 {¶ 38} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J. and Boggins, P.J., concur.
Hoffman, J., dissents.
[1] We further note that appellees have not filed a cross-appeal challenging the first Fyffe finding.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs to Appellant.