OPINION
{¶ 1} Appellant Janet Braglin appeals the decision of the Court of Common Pleas, Perry County, which granted summary judgment in favor of Appellee Lempco Industries, Inc. in a workplace intentional tort action. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellee Lempco is a manufacturer of metal products, operating a facility in New Lexington, Ohio. As part of appellee's processing of raw metals into finished products, various chemicals were used as lubricants and solvents. Some of these chemicals, as well as some of the metals themselves, contained potentially carcinogenic compounds. Appellant's late husband, Andrew Braglin, Jr., was employed in various positions in the company for over thirty years. In 1997, Andrew was diagnosed with pancreatic cancer. He died of the disease on March 14, 1998. In March 2000, appellant, individually and as executor of Andrew's estate, filed an application for death benefits with the Ohio Bureau of Workers' Compensation ("BWC"), claiming Andrew's cancer resulted from workplace chemicals, dust, and fumes to which he was exposed from 1993 to 1997.
 {¶ 3} In the case sub judice, on March 3, 2000, appellant, individually and as executor, filed an intentional tort action against appellee. After initially dismissing the action under Civ.R. 41(A), appellant refiled the action against appellee on October 10, 2001. On March 13, 2003, appellee filed a motion for summary judgment. A hearing on said motion was conducted on May 1, 2003. On May 20, 2003, the trial court issued a judgment entry granting summary judgment in favor of appellee. Appellant filed a notice of appeal on June 19, 2003, and herein raises the following sole Assignment of Error:
 {¶ 4} "I. The trial court erred in granting summary judgment in favor of appellee-employer because there was sufficient evidence in the record to raise a jury question of whether appellee-employer possessed the requisite level of intent under the three-part test set forth in Fyffe v. Jeno's (1991),59 Ohio St.3d 115, and its progeny to have committed an employer intentional tort."
 I. {¶ 5} In her sole Assignment of Error, appellant argues the trial court erred in granting summary judgment in favor of the employer-appellee in the intentional tort action. We agree.
 {¶ 6} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * "A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 7} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
 {¶ 8} Section 35, Article II of the Ohio Constitution and R.C. 4123.74 provide an employer is immune from suit by its employees for occupational injuries except for injuries resulting from intentional torts. See Jones v. VIP Development Company
(1984), 15 Ohio St.3d 90. In Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, the Ohio Supreme Court held that in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against an employee, the following must be demonstrated: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subject by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id., at paragraph one of the syllabus. Proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Id., at paragraph two of the syllabus.
 {¶ 9} We first address the initial Fyffe requirement, for purposes of summary judgment analysis, concerning whether appellee had knowledge of a dangerous process, procedure, instrumentality or condition at the New Lexington plant. At the outset of this analysis, we recognize that "[u]nder Ohio law, there are two distinct types of intentional tort. The first is where the employer's conduct achieves the exact result desired, i.e., during a quarrel the employer hits the employee in the head with a wrench. In the second type of case, intent is imputed to the employer where it knows the conduct is substantially certain to cause a particular result, even if it is not desired, i.e., [the] employer subjects the employee to highly radioactive material without protective measures." Goodin v. Columbia Gas ofOhio, Inc. (2000), 141 Ohio App.3d 207, 219, at f.n. 5, quotingPatton v. J H Reinforcing Structural Erectors, Inc. (Dec. 9, 1994), Scioto App. No. 93-CA-2194. Extending this observation to the first Fyffe requirement, it would appear that in seeking to demonstrate an employer's knowledge of a dangerous condition, where the intentional tort claim is that of exposure to various substances in a factory, a plaintiff faces the more difficult task of showing the employer knew of long-term environmental dangers in the workplace, as opposed to, say, a specific machine with missing safety devices. In addition, "[a] dangerous condition, as defined in the employer intentional tort doctrine, must be something beyond the natural hazard of employment."Burkey v. Farris (June 30, 2000), Tuscarawas App. No. 1999AP030015, citing Taulbee v. Adience, Inc., BMI Div. (1994),120 Ohio App.3d 11, 17.
 {¶ 10} Turning to the record before us in the case sub judice, we note Andrew Braglin worked at appellee's New Lexington facility for slightly over thirty years. During that time, he held a number of different jobs in the plant, including the operation of machinery, janitorial duties, and general labor. As appellee was engaged in the manufacture and processing of metal components, various lubricants and solvents were present at the New Lexington plant during the years Andrew was an employee. The record reveals appellee was in possession of approximately 100 material safety data sheets ("MSDS"), which outline the properties of metals and chemicals used in the facility, and describe relevant government regulations and safety precautions. Appellant notes that appellee began receiving the MSDS forms in 1985. Several of these MSDS forms contained specific warnings that a particular chemical or substance "may adversely affect the pancreas."[1] According to Robert Plant, a co-worker, during the various job activities he and Andrew performed, they were "regularly exposed to a chemical mist" which was emitted from the working machinery. Plant Affidavit, December 6, 2000. In addition to lung inhalation issues, exposure to the work environment left some employees' clothes and bodies in contact with such chemical mists. Id. According to Plant, employees complained to management that certain safety equipment items, such as gloves, were falling apart due to exposure to some of the chemicals. On at least one occasion, appellee's safety committee was made aware that the plant's ventilation system was not effective, that exhaust fans did not function due to residue build-up, and that windows were kept closed during the colder months. John Vernon, appellee's purchasing manager from 1985 to 1994, stated that he inventoried the chemicals which were brought into the facility, and that he reviewed the hazards associated with each. Vernon Deposition at 28.
 {¶ 11} Appellant further argues that the New Lexington facility operated by appellee was, by its nature, subject to periodic inspections by OSHA and the Ohio BWC, and that its wastewater system required a discharge permit from the Ohio EPA. Appellant also directs us to evidence that part of the concrete ceiling in the plant collapsed in 1989, which engineers subsequently attributed to corrosion from airborne substances inside the facility. Jerry Rhodes, production manager and eventual plant manager at the New Lexington facility, recollected that some of the machines for metal fabrication did create dust. Rhodes deposition at 52 and 99-100. However, as appellee notes in its reply, Rhodes also recalled the existence of working ceiling fans which pulled dust and fumes out of the plant. Id. Appellee additionally replies that Robert Plant stated a guard was installed on one lathe machine after Andrew complained about lather from the process getting in his face. Plant further testified that appellee installed an exhaust fan in the anodizing area and an airflow system in the "burn paint" area. Plant deposition at 51, 61. Furthermore, appellee submits that appellant's claim that clouds of dust, mist, and overspray from metal working processes were "pervasive" (Appellant's Brief at 13) is an exaggeration of the facts. Nonetheless, based on all of the aforementioned evidence, we are persuaded that a genuine issue of material fact was presented as to appellee's knowledge of a dangerous condition.
 {¶ 12} We next analyze whether summary judgment was proper as to the second Fyffe requirement; i.e., as to the issue of whether appellee knew that if Andrew were subjected by his employment to the dangerous condition, then harm to Andrew would have been a substantial certainty. In Ailiff v. Mar-Bal, Inc.
(1990), 62 Ohio App.3d 232, 240, the Eleventh District Court of Appeals opined that the existence of MSDS sheets, containing "harm may occur" language, is not determinative, in and of itself, of knowledge by the employer of the substantially certain nature of the injury. However, the record provided for our review in the case sub judice, in addition to the MSDS sheets, also includes depositions by Deborah Gray, Ph.D.(appellant's toxicology expert witness), Ronald Glass (co-worker), Robert Plant (co-worker), Barry Hoy (co-worker and former member of appellee's safety committee), John Vernon (plant purchasing manager), and Jerry Rhodes (plant manager). In addition, appellant attached to her reply to appellee's motion for summary judgment a six-page affidavit prepared by Daniel T. Woody, a certified industrial hygienist. Woody reviewed the MSDS documents, BWC, EPA, and OSHA records pertaining to the plant, sampling results obtained by two consulting companies and two environmental companies, minutes from the meetings of appellee's plant safety committee and hazardous communication committee, Andrew's personnel file, and other records. Woody Affidavit at 2. Woody also conducted a "walk-through" of the plant in the fall of 2002. Woody's affidavit sets forth, inter alia, seven "examples of Lempco not providing a safe work environment," largely drawn from his review of the company safety meeting documents. Woody Affidavit at 3-5. Woody thereupon averred as follows:
 {¶ 13} "For the reasons stated below, it is my professional opinion Lempco knew that if an employee was subjected to the conditions described above, that harm to that employee would be a substantial certainty.
 {¶ 14} "Lempco did not conduct job hazard analyses to recognize, identify, evaluate, and adequately control chemical exposures.
 {¶ 15} "Material Safety Data Sheets were available that described adverse effects when employees were exposed to these chemicals. Many of these required respiratory protection, protective clothing, and engineering controls that were not provided by Lempco.
 {¶ 16} "Material Safety Data Sheets available to Lempco identifies (sic) the harm which would result from exposures to the associated chemicals." Id. at 5.
 {¶ 17} Ohio law permits plaintiff-employees to present expert testimony to demonstrate that an employer was aware that injury was substantially certain to occur. See Brewster v. PrestigePackaging, Inc., Butler App. No. CA2000-05-085, 2001-Ohio-4201, citing Walton v. Springwood Products, Inc. (1995),105 Ohio App.3d 400, 405. Appellate courts in Ohio have further reversed summary judgments where the evidence included an expert opinion stating that if an employee were subjected to the employer's lack of safety measures, injury would occur with substantial certainty. See Brewster, supra, citing Miltenberger v. Exco
(Nov. 23, 1998), Butler App. No. CA98-04-087; Izor v. James L.Gross Lumber Co. (Mar. 9, 1998), Warren App. No. CA97-07-076. See, also, Linebaugh v. Electrical Control Systems, Inc., etal., (Sept. 23, 1994), Montgomery App. No. C.A. 14412. We therefore find upon review that reasonable minds could come to different conclusions regarding the "knowledge to a substantial certainty" component of Fyffe.
 {¶ 18} Finally, we address the third prong of Fyffe, as to whether appellee acted to require the employee to continue to perform the dangerous task. "Under the third prong of Fyffe,
the employer does not have to expressly order the employee to engage in the dangerous task which led to his death." Browne v.Walgreens, Lake App. No. 2002-L-0622003, 2003-Ohio-6691, at ¶ 18, citing Gibson v. Drainage Products, Inc.,95 Ohio St.3d 171, 2002-Ohio-2008, at ¶ 23. Instead, "in an action alleging workplace intentional tort, in order to overcome a motion for summary judgment, an opposing party can satisfy this [third] requirement by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task." Id. In the case sub judice, we find upon review of the record that a material issue of fact was presented as to whether appellee placed Andrew in a position where he would be subjected to a dangerous work environment in which harm was substantially certain to occur. SeeGibson, supra. See, also, Jackson v. Astro Shapes, Inc. (Feb. 29, 2000), Mahoning App. No. 98 CA 179.
 {¶ 19} We recognize, as have other appellate courts, that establishing that an employer's conduct was more than negligence or recklessness "is a difficult standard to meet." See, e.g.,McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236,246; Brookover v. Flexmag Industries, Inc., Washington App. No. 00CA49, 2002-Ohio-2404. However, under the complex circumstances of this case, we hold that summary judgment was not warranted in regard to the Fyffe requirements. Accordingly, appellant's sole Assignment of Error is sustained.
 {¶ 20} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Perry County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
Wise, J., Hoffman, P.J., and Boggins, J., concur.
[1] Appellant states in her brief that eight of the MSDS forms warned that unsafe use "could cause pancreatic cancer or pancreatic abnormalities." Appellant's Brief at 4, citing Exhibit "J" at 1-8. However, our review of Exhibit "J" does not indicate the use of either of these phrases in the MSDS forms.