PAGE et al., Appellants,

v.

TAYLOR LUMBER, INC. et al., Appellees.

[Cite as *Page v. Taylor Lumber, Inc.*, 161 Ohio App.3d 644, 2005-Ohio-3104.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 03CA2915.

Decided June 14, 2005.

646

Brian G. Miller, David A. Goldstein, and Frank A. Ray, for appellants.

Jeffrey D. Swick, Stephen K. Sesser, and John A. Zervas, for appellee, Taylor Lumber, Inc.

---

Per Curiam.

{¶ 1} Lidora and Brent Page appeal the judgment of the Scioto County Court of Common Pleas granting summary judgment to Taylor Lumber, Inc. ("Taylor"). The Pages contend that the trial court erred in granting summary judgment to Taylor on their employer intentional-tort claim. Because we find that the Pages failed to satisfy the three-pronged test established by the Ohio Supreme Court in *Fyffe v. Jeno's* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, to support an employer intentional tort, we overrule their assignment of error. Accordingly, we affirm the judgment of the Scioto County Court of Common Pleas.

## I

{¶ 2} Taylor manufactures hardwood flooring. In Taylor's McDermott, Ohio plant, an end trimmer cuts lumber to a specific length. Then, the lumber moves to another area of the plant where other employees hand grade the lumber. The pieces of scrap lumber cut by the end trimmer fall onto a conveyor belt below the end trimmer, along with large quantities of sawdust, wood shavings, and chips. The conveyor belt then carries the debris to a dumpster. Some of the debris, however, falls onto the floor around the conveyor belt, where laborers periodically sweep up the debris and place it on the conveyor belt for disposal.

{¶ 3} Lidora worked as a laborer in Taylor's trimmer building. On August 7, 2000, Lidora's supervisor, Rick Phipps, instructed her to clean in the general area of the conveyor belt. While she was cleaning the area around the end trimmer and conveyor belt, she noticed a piece of scrap wood caught in the conveyor belt. When Lidora attempted to remove the piece of scrap wood from the moving conveyor belt with her hand, her hand became stuck, and she was pulled into the conveyor belt. As a result, she suffered injuries to her hand, arm, and torso.

{¶ 4} Lidora and her husband, Brent, filed a complaint against Taylor and five John Doe manufacturers, sellers, suppliers, or servicers of the conveyor belt, alleging employer intentional tort, strict liability, products liability, negligence, and loss of consortium.

{¶ 5} On July 29, 2003, Taylor filed a motion for summary judgment. The Pages filed their memorandum contra Taylor's motion for summary judgment on August 26, 2003, and Taylor filed a reply memorandum on September 3, 2003.

{¶ 6} On September 9, 2003, the trial court granted Taylor's motion for summary judgment, finding that the Pages failed to satisfy the three-pronged test established by the Ohio Supreme Court in *Fyffe*, supra, to support an employer intentional tort. The trial court found that the Pages had failed to demonstrate that a dangerous condition existed within Taylor's business operation at the time of Lidora's accident. Additionally, the trial court found that the Pages had failed to demonstrate that Taylor had knowledge of the dangerous condition or the existence of a substantial certainty of injury if Lidora was subjected to the dangerous condition. Finally, the trial court found that the Pages had failed to demonstrate that Taylor required Lidora to perform the dangerous task that caused her injury. Accordingly, the trial court determined that there was no genuine issue of material fact and granted Taylor judgment as a matter of law.

{¶ 7} The Pages appeal, raising the following assignment of error: "The trial court erred by granting summary judgment for Taylor Lumber, Inc. ('Appellee') as there remain genuine issues of material fact that a jury should be allowed to consider with respect to whether Appellee's conduct constituted an employer intentional tort." [1]

## II

{¶ 8} Summary judgment is appropriate when the court finds that the following factors have been established: (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56. See *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; *Morehead v. Conley* (1991), 75

---

1. Although the judgment entry from which Lidora appeals does not resolve all of the claims raised below, the trial court specifically determined, pursuant to Civ.R. 54(B), that there was no just cause for delay. Accordingly, the judgment entry is a final appealable order, and we have jurisdiction to hear this appeal. See *Jarrett v. Dayton Osteopathic Hosp., Inc.* (1985), 20 Ohio St.3d 77, 20 OBR 407, 486 N.E.2d 99.

Ohio App.3d 409, 411, 599 N.E.2d 786. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id. at 411–412, 599 N.E.2d 786. See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10.

{¶ 9} The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264, citing *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. The moving party bears this burden even for issues for which the nonmoving party may bear the burden of proof at trial. Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * * He must present evidentiary materials showing that a material issue of fact does exist." *Morehead,* 75 Ohio App.3d at 413, 599 N.E.2d 786.

{¶ 10} In Ohio, an employee's only recourse for compensation for job-related injuries is generally through the workers' compensation system. However, an employee may enforce his common-law rights against his employer for an intentional tort. *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572.

{¶ 11} In an employer intentional-tort action, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts that show that there is a genuine issue of fact as to whether the employer has committed an intentional tort against his employee. *Fyffe,* 59 Ohio St.3d at 119, 570 N.E.2d 1108, quoting *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph seven of the syllabus. Specifically, to avoid summary judgment, the employee must establish all three of the following elements: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality, or condition, than harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe,* 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 12} It is generally recognized that the workers' compensation system "operates as a balance of mutual compromise between the interests of the employer and employee whereby employees relinquish their common law remedy

and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability." *Blankenship*, 69 Ohio St.2d at 614, 23 O.O.3d 504, 433 N.E.2d 572. In order to preserve the workers' compensation system, the standards for maintaining an intentional tort action must be strictly construed or the exception will interfere with the purposes of the Workers' Compensation Act. *Van Fossen*, 36 Ohio St.3d at 113–114, 522 N.E.2d 489.

## A

██ {¶ 13} The first element of the *Fyffe* test requires the employee to establish that the employer possessed knowledge of a dangerous process, procedure, instrumentality, or condition within its business operations. In order to satisfy this element, the employee must demonstrate that (1) a dangerous condition existed within the employer's business operations and (2) that the employer had knowledge that the dangerous condition existed. See *Dailey v. Eaton Corp.* (2000), 138 Ohio App.3d 575, 581–582, 741 N.E.2d 946.

██ {¶ 14} When determining whether a machine is dangerous, we must determine whether it presented a danger that "falls outside the 'natural hazards of employment,' which one assumes have been taken into consideration by employers when promulgating safety regulations and procedures." *Brookover v. Flexmag Indus., Inc.* (Apr. 29, 2002), Washington App. No. 00CA49, 2002 WL 1189156.

{¶ 15} Here, construing the evidence in a light most favorable to the Pages, we find that a reasonable trier of fact could conclude that Taylor had actual knowledge that a dangerous instrumentality or condition existed in its trimmer operation.

{¶ 16} The Pages' expert, Gerald Rennell, testified that based upon his training and experience in an industrial setting, "[i]n-running nip points are recognized as the most serious of hazards."[2] In its brief, Taylor admits that the nip point on the subject conveyor belt was not guarded. However, Taylor argues that it had no knowledge that the unguarded nip point presented any danger to its employees. Taylor claims that the unguarded nip point was not dangerous because employees did not regularly work in close proximity to the unguarded nip point and because there is no evidence of any previous injury arising from the subject conveyor belt.

---

2. An "in-running nip point" occurs at the point where the conveyor belt approaches and contacts the pulley that drives the conveyor belt. An in-running nip is dangerous because if the worker touches the belt as it approaches the pulley, it can pull her into the nip point.

{¶ 17} The Pages, however, contend that Taylor had knowledge of the danger posed by the conveyor's unguarded nip point because on several occasions, the company's supervisors observed employees reaching into the conveyor belt to retrieve scrap lumber. Jack Cooper, the trimmer operator, testified that wood fell off the conveyor belt every day. He also testified that during his training, he was instructed not to use his hand to retrieve blocks of scrap lumber from the moving conveyor belt.

{¶ 18} While Cooper was told not to reach into the moving conveyor belt, he testified that on more than one occasion, he had witnessed other employees reach into the moving conveyor belt the way Lidora did. He further testified that when he saw employees do this, he would tell them not to reach in unless they had him turn off the conveyor belt. Cooper also testified that he had told supervisor Phipps that employees were reaching into the conveyor belt to retrieve scrap lumber.

{¶ 19} The Pages also cite Phipps's deposition testimony to support their contention that Taylor had actual knowledge of the dangerous condition. They contend that Phipps testified that he witnessed employees reach into the running conveyor belt to grab blocks of wood on several occasions and chastised them for doing so. However, we note that the record contains only an uncertified and unsworn copy of the Phipps deposition transcript.

{¶ 20} Civ.R. 30(F)(1) governs the filing of a deposition transcript with a trial court. It provides, "Upon request of any party or order of the court the officer shall transcribe the deposition. * * * The officer shall certify on the transcribed deposition that the witness was fully sworn or affirmed by the officer and that the transcribed deposition is a true record of the testimony given by the witness. If any of the parties request or the court orders, the officer shall seal the transcribed deposition in an envelope endorsed with the title of the action and marked 'deposition of (here insert name of witness)' and, upon payment of the officer's fees, promptly shall file it with the court in which the action is pending or send it by certified or express mail to the clerk of the court for filing." Uncertified and unsworn depositions are not the types of evidence permitted by Civ.R. 56(C). *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 467, 20 O.O.3d 388, 423 N.E.2d 105; *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632. Here, the copy of the Phipps transcript included in the record is not certified. Additionally, the trial court's docket sheet reflects that it was not sealed at the time of filing. Hence, we find that Phipps's deposition transcript is not properly part of the record before us and disregard it.

{¶ 21} Based upon the foregoing evidence and construing the evidence in a light most favorable to the Pages, we find that a reasonable trier of fact could

conclude that Taylor had knowledge that a dangerous instrumentality or condition existed in its trimmer operation. Despite Taylor's protestations that the unguarded conveyor belt posed no danger because employees did not routinely work in close proximity to the unguarded nip point, the Pages have produced some evidence tending to show that Taylor was aware that the conveyor belt posed a danger. Further, the Pages have produced some evidence tending to show that Taylor was aware that its employees were exposed to the danger when they reached into the unguarded conveyor belt to retrieve scrap lumber. Accordingly, we find that the Pages have met their burden of demonstrating a genuine issue of material fact with regard to the first prong of the *Fyffe* test.

## B

{¶ 22} The second prong of the *Fyffe* test requires the employee to establish that the employer possessed knowledge that, if the employee is subjected to the dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty. We infer intent if the employer knows that the dangerous procedure is substantially certain to cause harm to the employee. See *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 175, 551 N.E.2d 962 (when an actor does something that he believes is substantially certain to cause a particular result, even if the actor does not desire that result, then intent will be inferred); see, also, *Ailiff v. Mar–Bal, Inc.* (1990), 62 Ohio App.3d 232, 238, 575 N.E.2d 228. Thus, the employee need not illustrate that the employer subjectively intended "to accomplish the consequences." *Van Fossen*, 36 Ohio St.3d at 117, 522 N.E.2d 489.

{¶ 23} Circumstantial evidence and inferences drawn from the evidence generally prove substantial certainty. *Shreve v. United Elec. & Constr. Co., Inc.*, Ross App. No. 01CA2626, 2002-Ohio-3761, 2002 WL 1677491, ¶ 43, citing *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044; *Emminger v. Motion Savers, Inc.* (1990), 60 Ohio App.3d 14, 17, 572 N.E.2d 257. Proof of the employer's negligence or recklessness is not sufficient to establish substantial certainty of injury. *Hannah*, 82 Ohio St.3d at 484, 696 N.E.2d 1044.

{¶ 24} Although the injured employee need not demonstrate that his employer subjectively intended to cause his injury, the Ohio Supreme Court has declared that the standard is meant to limit the instances where courts can circumstantially infer intent. Id. "[E]stablishing that the employer's conduct was more than negligence or recklessness 'is a difficult standard to meet.'" *Brookover*, Washington App. No. 00CA49, quoting *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 246, 659 N.E.2d 317. The standard is "harsh." Id., citing *Goodwin v. Karlshamns USA, Inc.* (1993), 85 Ohio App.3d 240, 247, 619 N.E.2d

508. We interpret the Supreme Court's stance on employer intentional torts "very narrowly out of a concern 'that an expansive interpretation could thwart the legislative bargain underlying workers' compensation by eroding the exclusivity of both the liability and the recovery provided by workers' compensation.'" Id., quoting *Taulbee v. Adience, Inc., BMI Div.* (1997), 120 Ohio App.3d 11, 18, 696 N.E.2d 625.

{¶ 25} In its effort to define the lines between negligence, recklessness, and intent, the Ohio Supreme Court has noted: "Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Fyffe*, 59 Ohio St.3d at 118, 570 N.E.2d 1108.

{¶ 26} Some relevant facts and circumstances that may support a finding that an employer had knowledge of a high probability of harm include, inter alia, prior accidents of a similar nature, see *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 170, 539 N.E.2d 1114, inadequate training, see *Vermett v. Fred Christen & Sons Co.* (2000), 138 Ohio App.3d 586, 602, 741 N.E.2d 954, and whether an employer has deliberately removed or deliberately failed to install a safety guard. See *Brookover*, Washington App. No. 00CA49, citing *Walton v. Springwood Products, Inc.* (1995), 105 Ohio App.3d 400, 663 N.E.2d 1365.

{¶ 27} The Pages allege a previous accident at Taylor's sawmill operation as evidence of Taylor's knowledge of the dangerous condition or instrumentality. They claim that another employee, Michael Bennett, suffered severe injuries as the result of a similar accident on another conveyor belt at Taylor's sawmill. In their effort to prove the existence of the prior accident, the Pages rely upon the deposition testimony of Taylor employees Thomas Graf and Phil Newton. Our review of the record before this court reveals that copies of Graf's and Newton's deposition transcripts, as well as those of William Spencer and Christopher Thayer, were filed below in sealed envelopes bearing the appropriate case caption, but without any marking indicating what the envelopes contained.

{¶ 28} As discussed above, Civ.R. 30(F)(1) governs the filing of a deposition transcript with a trial court. It requires the filing of certified copies of deposition transcripts in marked and sealed envelopes. Here, the depositions transcripts were not properly identified on the outside of the sealed envelope in accordance

with Civ.R. 30(F)(1). Further, upon breaking the seals, we discovered that the envelopes contained only uncertified copies of the deposition transcripts. Hence, we find that the depositions of Graf, Newton, Spencer, and Thayer are not properly part of the record before us.[3] Although there is case law to the effect that a trial court may, in its discretion, consider evidence of a type not enumerated in Civ.R. 56(C) when ruling on a motion for summary judgment if there is no objection, see, e.g. *Brown v. Ohio Cas. Ins. Co.* (1978), 63 Ohio App.2d 87, 17 O.O.3d 267, 409 N.E.2d 253, we note that the purported deposition transcripts remained sealed until opened by this court. Because the trial court did not exercise its discretion to consider these transcripts, we decline to consider them here.

{¶ 29} Moreover, even if we were to consider the depositions of Graf and Newton, we note that both specifically denied firsthand knowledge of the Bennett accident. They testified, over the objection of Taylor's counsel, that they had "heard" about a previous conveyor belt accident. Because Graf and Newton did not have personal knowledge of Bennett's accident, their testimony regarding the circumstances of his accident, even if we were to consider the uncertified deposition transcripts, is hearsay and, therefore, inadmissible. See Evid.R. 602.

{¶ 30} The Pages also argue that Taylor provided inadequate training and did not install a guard. However, we find that the evidence introduced does not show more than mere negligence for the training and does not show that Taylor *deliberately* failed to install a guard.

{¶ 31} Therefore, for the above reasons, we find that the Pages have not established that Taylor's conduct was more than negligence or recklessness. Consequently, the Pages did not establish substantial certainty of injury. Accordingly, we find that the Pages have not met their burden of demonstrating a genuine issue of material fact with regard to the second prong of the *Fyffe* test.

{¶ 32} Having found that the Pages did not meet the second prong of the *Fyffe* test, we do not need to analyze whether they established the third prong of the test because this argument is moot.

{¶ 33} In sum, we find that the Pages have not satisfied their burden of establishing that genuine issues of material fact exist. Therefore, summary judgment is appropriate. Accordingly, we overrule the Pages' sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

---

3. Copies of Jack Leroy Cooper's and Garry Curran's deposition transcripts were similarly filed. However, the original certified and sealed transcripts of their depositions were also separately filed. Accordingly, the Cooper and Curran deposition transcripts are properly included in the record before us.

McFARLAND and WRIGHT, JJ., concur.

KLINE, J., dissents.

J. CRAIG WRIGHT, J., retired, of the Supreme Court of Ohio, sitting by assignment.

KLINE, Judge, dissenting.

{¶ 34} I agree with the majority that the Pages introduced evidence to establish the first prong of the *Fyffe* test. However, I would also find that they established the second and third prongs as well. Thus, I would have reversed the summary judgment of the trial court and remanded this cause to the trial court for further proceedings.

*Second Prong of Fyffe Test*

{¶ 35} I agree with the majority that some relevant facts and circumstances that may support a finding that an employer had knowledge of a high probability of harm include, inter alia, prior accidents of a similar nature, see *Sanek*, 43 Ohio St.3d at 170, 539 N.E.2d 1114, inadequate training, see *Vermett*, 138 Ohio App.3d at 602, 741 N.E.2d 954, and whether an employer has deliberately removed or deliberately failed to install a safety guard. See *Brookover*, Washington App. No. 00CA49, citing *Walton v. Springwood Prod., Inc.* (1995), 105 Ohio App.3d 400, 663 N.E.2d 1365.

{¶ 36} While the Pages have failed to introduce evidence tending to prove the existence of a prior similar accident, that failure "is not necessarily fatal to a plaintiff's case." *Taulbee*, 120 Ohio App.3d at 20, 696 N.E.2d 625. As the *Taulbee* court stated, "Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If we were accept the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. This is not the purpose of *Fyffe*." Id. at 20, 696 N.E.2d 625, quoting *Cook v. Cleveland Elec. Illum. Co.* (1995), 102 Ohio App.3d 417, 429–430, 657 N.E.2d 356. As the *Cook* court aptly noted, "It is not incumbent that a person be burned before one knows not to play with fire." Id. at 430, 657 N.E.2d 356.

{¶ 37} The Pages cite Rennell's report and the National Safety Council Data Sheet regarding belt conveyors for bulk materials attached thereto to support their contention that Taylor knew that Lidora's injury was substantially certain to occur. In its reply memorandum below and its brief here, Taylor objects to

the use of Rennell's report and the National Safety Council Data Sheet attached to it on the ground that they do not fall within the categories of evidence permitted by Civ.R. 56. Additionally, Taylor contends that the National Safety Council Data Sheet is hearsay pursuant to Evid.R. 802.

{¶ 38} "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E). See, e.g., *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 467, 20 O.O.3d 388, 393, 423 N.E.2d 105, 111 ('The requirement of Civ.R. 56[E] that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions.') Moreover, while it is correct that a court, in its discretion, may consider other documents than those specified in Civ.R. 56(C) if there is no objection, *Brown v. [Ohio Cas.] Insurance Co.* (1978), 63 Ohio App.2d 87, 17 O.O.3d 267, 409 N.E.2d 253, there is no requirement that a court do so." *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632.

{¶ 39} Here, in support of their memorandum contra summary judgment, the Pages submitted Rennell's affidavit with his March 10, 2003 report and the National Safety Council Data sheet attached thereto. While Rennell's affidavit states that a copy of his report is attached, the affidavit fails to specifically authenticate the report and the National Safety Council Data Sheet attached to it by stating that the copies are "true and accurate reproductions." However, because Rennell's deposition testimony is properly included in the record, the inadequacy of his affidavit does not completely preclude our consideration of Rennell's opinions.[4]

{¶ 40} Furthermore, Evid.R. 703 provides that facts or data upon which an expert "bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703 does not preclude an expert from rendering an opinion based upon materials outside the record. As noted by the Fifth District Court of Appeals, "This is critical to a summary judgment motion affidavit as all the facts or data are not part of the record." *Nauman v. Cooper Energy Serv. Internatl., Inc.* (Apr. 15, 2002), Knox App. No. 01CA000015, 2002 WL 561933.

{¶ 41} Here, the National Safety Council Data Sheet is not properly part of the record. However, to the extent that Rennell's testimony discusses the informa-

---

4. It appears that Rennell's March 10, 2003 report was an exhibit at his deposition. However, I note that the exhibits from his deposition are not included in the record before this court.

tion contained in the National Safety Council Data Sheet and relies upon it in forming his opinions, this court may consider it.

{¶ 42} In his affidavit and deposition, Rennell states that he reviewed, inter alia, the American National Standards Institute conveyor code, Occupational Health and Safety Administration regulations, and the National Safety Council Data Sheet for Conveyors. Rennell states in his affidavit: "It is clear to me based upon my investigation and the materials I have reviewed, that Taylor Lumber did engage in an employer intentional tort with respect to Lidora Page in that Taylor Lumber knew of the danger associated with an unguarded nip point, Taylor Lumber instructed its employees to clean around the conveyor and this unguarded nip point and knew they did so while the conveyor was running, and Taylor Lumber knew that harm to an employee was substantially certain to occur under these conditions."

{¶ 43} Several Ohio courts have recognized that an expert's affidavit that does nothing more than echo an employee's opinion about the dangers of his work does not raise a genuine issue of material fact as to the employer's knowledge that injury was substantially certain to result from the work. *Delnoce v. Bridgestone/Firestone, Inc.* (Feb. 9, 1999), Summit App. No. 18883, 1999 WL 66200, citing *Hoadley v. Quality Castings Co.* (Apr. 24, 1996), Wayne App. No. 95CA0070, 1996 WL 199436. Here, however, Rennell's deposition testimony serves to explain and support his conclusory affidavit statement. Rennell testified that his report states, "It is my opinion that allowing untrained employees to clean near an unguarded nip point on a moving conveyor is substantially certain to result in serious injury." He then explained that Taylor placed its employees near a moving, unguarded conveyor-belt pulley and told them that it was okay to sweep, shovel up debris, or pick up wood scraps, and dump them on the conveyor. Based upon these instructions, Rennell found that it was foreseeable that employees completing these cleanup tasks would reach into the conveyor if they saw pieces of lumber in there, believing that these duties were part of their assignment. He then cited the National Safety Council's data sheet for the proposition that one of the most common times for people to be injured by conveyor belts is when they are cleaning a moving conveyor belt.

{¶ 44} Rennell explained that the conveyor-belt configuration would not be substantially certain to cause harm if the employees were trained that they should never, under any circumstances, touch the conveyor belt or get anywhere near the conveyor belt. He continued to explain that "what makes [the injury] substantially certain to occur is the failure to instruct employees about the danger when [the employer] know[s] people are reaching in there." Rennell further opined that Lidora's accident was substantially certain to happen because,

based upon her testimony, the first and only time she reached into the conveyor belt, she got hurt.

{¶ 45} Here, there is some evidence tending to demonstrate that Taylor's employees, including Lidora, did not receive adequate training. Lidora testified that she received no instruction regarding the use and operation of the conveyor belt. Lidora also testified that, during her three months of employment with Taylor, she was never told to have the conveyor belt shut down if she noticed scrap lumber trapped in the belt. Moreover, Lidora stated that on a prior occasion when she noticed scrap lumber in the conveyor belt, she witnessed one of Taylor's Mexican employees reach in the conveyor belt to retrieve it.

{¶ 46} Construing the foregoing evidence in a light most favorable to the Pages, a reasonable trier of fact could conclude that Taylor knew that an accident such as Lidora's was substantially certain to occur due to Taylor's knowledge of the dangerous nature of the unguarded in-running nip point and its failure to adequately train its employees regarding the danger.

{¶ 47} The employer's deliberate removal or failure to install a guard may also support a finding that the employer knew that harm was substantially certain. *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph three of the syllabus; *Walton v. Springwood Prod., Inc.*, 105 Ohio App.3d 400, 663 N.E.2d 1365. Here, Taylor concedes that the conveyor belt was unguarded at the time of Lidora's accident. However, Taylor contends that it presented no danger because there was no evidence that any employee was required to be in close proximity to the nip point. Yet Lidora's and Cooper's testimony reveals that employees cleaned the area around the conveyor belt daily. Furthermore, the record demonstrates that the nip point was clearly within reach of these employees as they cleaned.

{¶ 48} This situation differs factually from that of *Walton*, supra, where the employer replicated a piece of equipment but deliberately chose not to incorporate a safety device present in the original. However, construing this argument in a light most favorable to the Pages, a reasonable trier of fact could conclude that Taylor knew Lidora's injuries were substantially certain to occur based upon Taylor's deliberate decision to forgo mechanical guarding with knowledge that its untrained or minimally trained employees were reaching into the moving conveyor belt to retrieve scrap lumber.

{¶ 49} Based upon the foregoing, I would find that the Pages have demonstrated the existence of a genuine issue of material fact with regard to the second prong of the *Fyffe* test.

### Third Prong of the Fyffe Test

{¶ 50} The third prong of the *Fyffe* test requires the employee to produce some evidence tending to show that the employer, despite its knowledge of the

dangerous condition and the substantial certainty of harm to its employees, continued to require the employee to perform the dangerous task. For purposes of surviving a motion for summary judgment, it is not necessary for the employee to demonstrate that the employer ordered the employee to engage in the dangerous task. The employee may satisfy this element by producing "evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task." *Gibson v. Drainage Prod., Inc.*, 95 Ohio St.3d 171, 2002-Ohio-2008, 766 N.E.2d 982, ¶ 24. See, also, *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 487, 696 N.E.2d 1044. A jury question exists if there is sufficient evidence to demonstrate that " 'the employer merely expected the employee to engage in a dangerous task.' " *Costin v. Consol. Ceramic Prod., Inc.*, 151 Ohio App.3d 506, 2003-Ohio-437, 784 N.E.2d 759, ¶ 16, quoting *Gibson* at ¶ 24.

{¶ 51} Here, the Pages have presented some evidence tending to prove that Lidora was instructed to clean the sawdust and scrap wood around the subject conveyor belt, with little or no training or instruction regarding the specific hazards of the area. Additionally, the Pages assert that without training, Lidora was left to follow the example of her co-workers, at least one of whom she had witnessed reach into the conveyor belt to retrieve scrap lumber, as she did on the day of her accident.

{¶ 52} Taylor contends that Lidora was explicitly instructed to clean the area around the conveyor belt and notes that there was no evidence that any supervisor ever instructed her to remove wood pieces from the conveyor belt. Taylor claims that employees caught sticking their hands in the conveyor belt to remove wood scraps were chastised for the conduct.

{¶ 53} Taylor asserts that Lidora's actions were similar to the actions of the employee in *Sanek*, 43 Ohio St.3d 169, 539 N.E.2d 1114, who struck a mixing shaft with his gloved hand in an effort to correct a "clapping" noise in the machine. The employee's hand was caught in the rotating shaft and sustained injuries resulting in the amputation of his arm. There, the employee prevailed on his intentional-tort claim at trial, and the trial court overruled the employer's motion for a directed verdict and judgment notwithstanding the verdict. The court of appeals affirmed the trial court's decision. The Ohio Supreme Court reversed the court of appeals, finding that the employer could not be expected to anticipate the employee's actions that led to his injury. Id. at 172, 539 N.E.2d 1114. While the *Sanek* court indicated that there was evidence that other employees had engaged in similar conduct without injury, there was no indication that the company was aware of such prior conduct.

{¶ 54} Taylor argues that, as in *Sanek*, it could not anticipate that its employee would undertake this dangerous task while acting within the scope of her normal

**660**

duties. I disagree. Here, there is ample evidence in the record that would allow a reasonable trier of fact to conclude that Taylor had knowledge that its employees reached into the moving conveyor belt to retrieve scrap lumber when they were instructed to clean the area around the conveyor belt.

{¶ 55} Additionally, a reasonable trier of fact could conclude that an employer giving an employee an instruction to clean up sawdust and scrap wood in a general area would *expect* that employee to clean up *all* of the sawdust and wood scraps in the vicinity. Accordingly, I would find that the Pages have met their burden of demonstrating a genuine issue of material fact with regard to the third prong of the *Fyffe* test.

## Conclusion

{¶ 56} I respectfully dissent because I would find that the Pages have satisfied their burden of establishing that genuine issues of material fact exist. Therefore, summary judgment is inappropriate. Accordingly, I would sustain the Pages' sole assignment of error, reverse the judgment of the trial court, and remand this cause for further proceedings.