DECISION AND JUDGMENT ENTRY
{¶ 1} After suffering a workplace injury, Lex E. Hawk, Jr., brought this action alleging that his employer, Menasha Packaging, committed an intentional tort when one of its forklifts jumped into gear and pinned him to a wall. The trial court entered a summary judgment in favor of the employer. On appeal, Hawk claims that Menasha's decision to repair its forklifts, rather than replace them with new ones, created a situation in which the forklifts were substantially certain to cause him harm. However, Hawk did not identify any specific facts to support his contention that his employer knew with substantial certainty that it was only a matter of time before someone was injured by a defective forklift. Because Hawk cannot establish the existence of a genuine issue of material fact on this issue, summary judgment in the employer's favor was appropriate. *Page 2 
 I. Facts {¶ 2} Menasha employed Hawk as a truck driver. However, his job duties also included reviewing repair bills for Menasha's forklifts and relaying employee reports that forklifts needed maintenance to company superiors. On the day he suffered the injury, Hawk and John Brandau,[1] a Menasha forklift operator, were loading a tractor-trailer that Hawk used to make deliveries. While loading the truck, Brandau engaged the forklift's parking brake and stepped down from the forklift in order to help Hawk with a pallet. According to Hawk, the forklift jumped into gear, moved forward, and pinned him against a concrete wall, causing injuries.
 {¶ 3} Prior to this accident, employees had made various reports to Menasha that its forklifts needed repairs, and Menasha, through an independent party, performed repairs on these forklifts. According to Hawk, Menasha repaired the forklift that injured him the week before the accident. Hawk argues that Menasha attempted to repair forklifts that could not safely be repaired rather than replacing them. To support that assertion, he points out that Menasha replaced its forklift fleet in response to his injury.
 {¶ 4} Hawk and his wife, Rhonda (collectively "Hawk"), brought this action alleging that Menasha negligently and intentionally caused his injuries. Menasha moved for a summary judgment, arguing that Hawk's negligence claim had been preempted by the Ohio Workers' Compensation Act and that Hawk had failed to produce any evidence that Menasha intentionally injured him. Menasha supported its motion with references to Hawk's deposition, which was previously filed. Hawk responded and included his affidavit, which averred that Menasha had received *Page 3 
numerous reports that "many of the forklifts were unfit for use and were unsafe for the employees to use" and that, "[w]ithin two days after I was injured, my employer finally replaced all of the old forklifts with new ones." The trial court entered a summary judgment in favor of Menasha, finding that Hawk had failed to put forward sufficient evidence to prove each element of his claim. Specifically, the trial court found that "[t]here is simply no evidence presented by the plaintiff by which a reasonable jury could conclude that the Defendant knew that injury by a forklift was a `substantial certainty.'" The trial court certified this order as final and added Civ. R. 54(B) language. This appeal followed.
 II. Assignments of Error {¶ 5} Hawk presents three assignments of error:
 1. "The trial court erred by granting summary judgment when genuine issues of material fact existed."
 2. "The trial court erred by granting summary judgment when the moving party was not entitled to judgment as a matter of law, and reasonable minds could come to other conclusions other than judgment against the non-moving party."
 3. "The trial court erred by granting summary judgment when the trial court did not construe the evidence most strongly in favor of the non-moving party."
Because each of these assignments of error challenges the propriety of the summary judgment in favor of Menasha, we consider them together.
 III. Standard of Review {¶ 6} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination.Doe v. Shaffer, 90 Ohio St.3d 388, 390, *Page 4 2000-Ohio-186, 738 N.E.2d 1243. A summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. Id. See also Bostic v. Connor (1988), 37 Ohio St.3d 144, 146,524 N.E.2d 881; Civ. R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798. If the moving party satisfies this burden, the nonmoving party then has the reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly. Kulch v. Structural Fibers, Inc.,78 Ohio St.3d 134, 145, 1997-Ohio-219, 677 N.E.2d 308.
 IV. The Intentional Tort Claim {¶ 7} Although the workers' compensation provisions provide employees with the primary means of compensation for injury suffered in the scope of employment, an employee may institute an action against the employer for an intentional tort. Shreve v. United Elec. Constr. Co., Ross App. No. 01CA2626, 2002-Ohio-3761, at ¶ 29. "When an employer's conduct is sufficiently egregious to constitute an intentional tort, it is said that the employer's act occurs outside the scope of employment, and, thus, recovery is not limited to the workers' compensation provisions." Id. *Page 5 
 {¶ 8} There are three elements required to state a claim for an intentional tort in these circumstances:
 * * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Gibson v. Drainage Products, Inc., 95 Ohio St.3d 171, 2002-Ohio-2008,766 N.E.2d 982, at ¶ 16, quoting Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus. In entering a summary judgment in favor of Menasha, the trial court concluded that Hawk had failed to demonstrate that there was a genuine issue of material fact regarding the second prong of the Fyffe test. We agree with the trial court that, based upon the summary judgment evidence the parties submitted, reasonable minds can conclude only that Menasha did not know that injury to appellant was a substantial certainty. Thus, a summary judgment was appropriate.
 {¶ 9} In the employment context, an intentional tort claim is a narrow exception to the exclusivity provisions of the Workers' Compensation Act. Shreve, 2002-Ohio-3761, at ¶ 42. Accordingly, a plaintiff must demonstrate more than the employer's mere negligence or recklessness. Mere knowledge and appreciation of a risk does not establish intent on the part of the employer; instead, there must be such a risk that the employer is certain or substantially certain that harm will result.Gibson, 2002-Ohio-2008, at ¶ 17.
 {¶ 10} Hawk argues that he presented sufficient evidence to withstand Menasha's motion for a summary judgment, specifically referencing his deposition and *Page 6 
his affidavit. However, although the record reflects that his deposition was filed in the trial court, the deposition itself does not appear in the record transmitted to this court. Rather than supplementing the record, Hawk attached what purports to be his deposition to his appellant's brief.[2] However, attaching the deposition to a brief does not serve to perfect the record for appeal. See Murral v.Thomson, Hocking App. No. 03CA8, 2004-Ohio-432, at ¶ 16 (holding that a party may not add to the record on appeal by attaching unauthenticated copies of trial court orders to an appellate brief); Singh v. New YorkFrozen Foods, 8th Dist. Nos. 82284 82775,2004-Ohio-1257, at n. 3 ("[Attaching part or even the entire transcript to a brief does not properly place a record before an appellate court."). However, it is clear that the deposition was filed and the trial court considered it. It is also clear that, even were it contained in our record, Hawk would not prevail in this appeal.
 {¶ 11} The trial court relied on Hawk's deposition testimony in entering a summary judgment in favor of Menasha. Specifically, the trial court ruled that Hawk had failed to establish his employer knew it was subjecting an employee to a dangerous condition that was substantially certain to cause harm. Hawk argued that Menasha had the requisite degree of knowledge because employees had reported that its forklifts were "unsafe," yet the company had repaired the forklifts rather than replacing them. The trial court noted:
 in his deposition testimony, [Hawk] testified that his employer always addressed any concerns about the safety of the forklifts and that repairs were frequently made. These facts indicate that the employer was, at most, negligent in its maintenance of the forklifts [or] in the procedures used to identify and repair the forklifts.[1] [Hawk] has presented no evidence of any prior accidents caused by the forklifts, no evidence of any *Page 7 
concealment of danger by his employer, and no evidence of violation of safety codes.
 [1] [Hawk's] own testimony that repairs were always made after any reports of problems tend to suggest that the employer was trying to avoid injuries to employees.
Because the entire deposition is not part of the record, we must presume it supports the trial court's findings and that Menasha met its initial burden in moving for a summary judgment. See Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 19, 520 N.E.2d 564 ("Upon appeal of an adverse judgment, it is the duty of the appellant to ensure that the record, or whatever portions thereof are necessary for the determination of the appeal, are filed with the court in which he seeks review. * * * Any lack of diligence on the part of an appellant to secure a portion of the record necessary to his appeal should inure to appellant's disadvantage rather than to the disadvantage of appellee."); Gibson v.Gibson, Washington App. No. 05CA49, 2006-Ohio-2880, at ¶ 9 (holding that when portions of the record necessary for resolution of assigned errors are omitted, "the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings").
 {¶ 12} Alternatively, even if we consider the attachment to Hawk's brief, it appears that Menasha met its initial burden to demonstrate the absence of a genuine issue of material fact and the entitlement to a judgment as a matter of law. In moving for a summary judgment, Menasha cited parts of Hawk's deposition where he testified that, with the possible exception of requests for new tires, Menasha always repaired the forklifts when an employee made a report that a repair was needed. According to Hawk, Menasha's policy following such a report was to "shut the forklift down" until it could be repaired by an independent third party, HighTech. Moreover, Menasha had *Page 8 
the forklifts on a preventative maintenance schedule, and the forklifts were routinely serviced by HighTech. It is not clear from the record what caused the accident. According to the cited portions of Hawk's deposition, HighTech examined the forklift after the accident and could not get it to jump into gear by itself.[3] Hawk himself testified that he did not see what caused the accident.
{{¶ 13} In this case, the forklift that injured Hawk had its braking system serviced two weeks before the accident and its gear selectors replaced one week prior to the accident.[4] Hawk does not explain whether there were any additional safety concerns raised by employees concerning this forklift immediately following these repairs. Nor does he assert that there were safety concerns regarding this particular forklift, or any of the other forklifts, that Menasha had ignored. According to Hawk, however, Menasha was aware of the various mechanical problems suffered by its forklifts, but it nonetheless "attempted to save money by trying to repair forklifts that were beyond the point of repair." However, the deposition does not show that Menasha knew that the safety issues raised by employees remained unresolved after HighTech had serviced the forklifts, much less does it provide evidence that Menasha had knowledge that its forklifts posed a substantial certainty of injuring its employees. Nor is there any evidence to establish that the forklifts were in fact, "beyond repair." Instead, Hawk's own testimony suggests that when Menasha became aware of a safety issue, it would shut the forklift down and attempt to fix the problem. Thus, we conclude that Menasha had met its initial burden in moving for a summary judgment. *Page 9 
 {{¶ 14} The burden therefore shifted to Hawk to set forth specific facts showing that there is a genuine issue of material fact for trial. Civ. R. 56(E). The only additional evidence Hawk placed in the record in response to Menasha's motion for a summary judgment was his own affidavit. However, the affidavit attached to Hawk's brief does not demonstrate the absence of a genuine issue of material fact. At most, Hawk averred that Menasha had previously received reports that the forklifts were unsafe and that Menasha chose to repair rather than replace them. However, as is the case with his deposition, Hawk's affidavit does not show that Menasha knew that safety issues raised by employees had not been resolved after HighTech serviced the forklifts. Nor does the affidavit put forward evidence of prior similar incidents involving the forklifts, violations of safety regulations, or other patterns of behavior that would support the inference that Menasha had knowledge to a substantial certainty that the injury would occur. SeePage v. Taylor Lumber, Inc., Scioto App. No. 03CA2915, 2005-Ohio-3104, at ¶ 26 ("Some relevant facts and circumstances that may support a finding that an employer had knowledge of a high probability of harm include, inter alia, prior accidents of a similar nature, inadequate training, and whether an employer has deliberately removed or deliberately failed to install a safety guard." (Citations omitted.)). There is no showing that, prior to the accident, Menasha had notice that this forklift, or any other in its fleet, could jump into gear and hit an employee notwithstanding the engagement of the emergency brake.
{{¶ 15} Hawk argues that Menasha's subsequent decision to replace all of its forklifts with new ones indicates Menasha knew that it was substantially certain that the forklifts would cause injury. Although the evidence concerning replacement appears in *Page 10 
Hawk's affidavit, we cannot consider it. Civ. R. 56(E) provides that "[supporting and opposing affidavits shall * * * set forth such facts as would be admissible in evidence * * *." Evidence of subsequent remedial measures taken following an injury-causing event, which, had they been taken previously, would have made the injury less likely to occur, is "not admissible to prove negligence or culpable conduct in connection with the event." Evid. R. 407; see also Briscoe v. Ohio Dept. ofRehabilitation and Correction, 10th Dist. No. 02AP-1109, 2003-Ohio-3533, at n. 2 (holding that an appellate court cannot consider subsequent remedial measures put forward to prove culpability). Here, the decision to replace the forklifts represents a subsequent remedial measure that Hawk has offered for the purpose of proving that Menasha intentionally injured him. Thus, Hawk cannot rely on this fact to withstand Menasha's motion for a summary judgment.
 V. Conclusion {{¶ 16} Because Hawk has failed to demonstrate a genuine issue of material fact and because a summary judgment was proper in this case, we affirm.
 JUDGMENT AFFIRMED. *Page 11 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. McFarland, J.: Concur in Judgment and Opinion.
[1] Brandau is a Defendant in this case, but Hawk does not assign error to summary judgment in Brandau's favor. Thus we do not include any discussion of that aspect of the case.
[2] Neither Hawk nor the court reporter have signed the copy of the deposition attached to Hawk's brief.
[3] According to Hawk, HighTech offered more extensive testing, which Menasha declined
[4] According to Hawk's deposition, Menasha leased, rather than owned, the forklifts. It is not clear whose responsibility it was to see that repairs were made to the forklifts; however, it was apparently the owners who serviced the gear selectors and the braking system. It is not clear whether these repairs were taken as part of preventative maintenance or whether an employee had complained that the forklift was unsafe. *Page 1